*566 OPINION.
Lansdon:
Petitioners allege that the deficiencies determined for 1919 and 1920 are invalid inasmuch as they were asserted by the respondent in violation of the provisions of section 1309 of the Bevenue Act of 1921, which provides:
That no taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer’s books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
That section of the statute merely provides for relief from unnecessary examination of a taxpayer’s boobs and does not mean that any deficiency resulting from a reexamination in violation of section 1309 shall be void. There is no evidence that deceased objected to the reexamination of his books. He might have refused to permit the investigation without notice in writing, but not having done so the protection afforded by the statute will be deemed to have been waived. J. S. McDonnell, 6 B. T. A. 685.
The important issue presented for determination is whether certain cash payments received by deceased from the lessees under a 99-year lease constituted taxable income when received. The respondent contends that the amounts were paid as a bonus for the lease. Petitioners contend that the payments were in the nature of a cash bond as security for performance of the lease.
We must look to the provisions of the lease in determining the nature of the payments. Paragraph 31 provides that in addition to all other payments there should be paid “ as security for performance by the lessees ” the sum of $50,000, payable $25,000 upon execution of the lease and $1,250 on the first day of each January, April, July, and October thereafter until the remaining $25,000 had been paid. The $50,000 security was to remain in possession of the lessor during the entire term of 99 years without any charge for interest.
*567 At the encl of the 99-year term it is provided in paragraph 25 that three appraisers shall be appointed to determine the fair market value of all the buildings and improvements and the fair market value of the land, and that lessor shall have the option either (1) to terminate the lessees’ interest by returning whatever balance of the $50,000 security lessees will then be entitled to receive and paying lessees the appraised value of the buildings in excess of $200,000, or (2) to convey to lessees the premises at the appraised value of the land plus $200,000, but deducting whatever balance of the $50,000 security lessees will then be entitled to have returned.
The $50,000 was paid as security for the performance of all lessees’ obligations under the lease. The lease provides that upon failure of lessees to pay rent, taxes, insurance premiums, or to discharge any liens against the property lessor shall make the payment and deduct the amount from the $50,000. If lessees make an assignment of the lease the lessor shall not be obliged to return or release money or security of any kind. If at any time the buildings depreciate to a value below $200,000 the lessor can reimburse himself from the $50,000 security fund.
Upon the happening of certain events the $50,000 security will be returned to lessees. Lessees are given the option to purchase until December 31, 1929, at a price of $500,000. If they so elect to purchase under the option, they shall be credited with the balance due them of the $50,000 security. If the premises should be condemned under the law of eminent domain the lessees shall receive back the balance of the $50,000 security. If at-any time the buildings, by additions or new structures, will be made of a value greater by $50,000 than the amount which it would cost to erect the present building new, the balance of the $50,000 security shall be returned to the lessees. But in that case the rental for the remainder of the term shall be increased by $2,500 per year. In exchange for the cash security which is thus returned lessor has buildings or additions of equal or greater value, which will result immediately in income to him. Miller v. Gearin (C. C. A.), 258 Fed. 225; Cryan v. Wardell, 263 Fed. 248.
The amounts paid as security were not held in escrow, or as a trust fund. When received by deceased they were a part of his general assets and could be used by him without restriction. He was bound, however, to account to the lessees for the $50,000 and to return the amount under the conditions stated above. The payments were not income to deceased when received any more than borrowed money is income when received.
If lessees failed to pay rent, the portion of the security taken to make the payment would at that time be income. If the lessees make an assignment of the lease, the $50,00’0 is income when forfeited. If *568 the buildings depreciated below a value of $200,000 for any reason the $50,000 would go to replace the capital. If the lessees elect to purchase before 1929, this $50,000 shall be applied on the purchase price and will then be included in computing income.
We are of the opinion that this money was paid to deceased as security in the nature of a cash bond, and that the respondent erred in including it as income in the years received.
Reviewed by the Board.

Decision will be entered v/nder Rude 50.