## CLINTON HOTEL REALTY CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10237.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1942.

Philip J. Maron and Theodore Witkin, both of New York City, for petitioner.

Helen R. Carloss, J. Louis Monarch, Sewall Key, and Louise Foster, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Roy N. McMillan, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayer, Clinton Hotel Realty Corporation, leased its fully furnished hotel in the City of Miami Beach, Florida, on June 3, 1935, for a term of ten years, for a total rental of $210,000 payable $21,000 on delivery of the lease, "Which shall be credited upon the rental for the last year of the term of this lease on the 3rd day of June, 1944, *upon the terms and conditions hereinafter set forth";* and other sums of $21,000 annually as scheduled through February 15, 1944. The last year's rent is listed as due June 3, 1944, $21,000. During the fiscal tax year ending May 31, 1936, the taxpayer being on the accrual basis returned as income the $21,000 rent which accrued and was paid for the first year of the lease, but did not return as income the $21,000 paid at the execution of the lease, considering it to be a deposit for the security of the tenth year's rent and for other provisions of the lease. The Commissioner held it was income when received, and the Board of Tax Appeals upheld him. 44 B.T.A. 1215. Additional taxes were determined accordingly.

It is not denied that if the $21,000 was paid and received as rent in advance, it was taxable, though not yet earned. United States v. Boston. & Providence R. R. Corp., 1 Cir., 37 F.2d 670; Renwick v. United States, 7 Cir., 87 F.2d 123; Commissioner v. Lyon, 9 Cir., 97 F.2d 70. On the other hand, if it was paid and received as security, with no present right or claim of full ownership, it would not be presently income, although it was expected finally to be applied in payment of the last year's rent if nothing happened to prevent. Barker's Estate v. Commissioner, 13 B.T.A. 562; Warren Service Corp. v. Commissioner, 2 Cir., 110 F.2d 723. In the latter situation, though the money is rightfully received, and if the parties so intend may be freely used, yet because of the acknowledged liability to account for it, there is no gain; just as in borrowing there is none. The case of North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197, has no application, for the recipient of the money there claimed it was fully his, he acknowledged no right in another, and the holding was that a contrary claim by that other which might prove good would not prevent the receipt of the money being present income. We must consider what the acknowledged terms were on which this $21,000 was paid and received.

If the only agreement was that it should apply to the last year's rent, it would of course be rent paid in advance. But in, that provision above quoted there is reference to other terms and conditions. These are: "It is further understood and agreed that the sum of $21,000, this day paid, shall be considered as security for, the payment of rent reserved by this lease, and also as security for the performance by the lessee of, the covenants, conditions and agreements of this lease, and also for any damage which the lessor may sustain by reason of any act of the lessee. The lessee agrees that if it vacates or surrenders the premises * * * or if it violates any of the terms and conditions of this lease then in that event the $21,000 deposited as security shall be retained by the lessor as liquidated and stipulated damages." "Should the premises be totally destroyed before the beginning of the last year of the term of this lease, the total amount of the security deposit provided for herein shall be remitted to the lessee." There is a provision that if the lessor sells the demised premises,

he "may pay the deposit made under the terms of this lease" to his assignee, but shall remain liable for its return to the lessee. Among the many covenants in the lease thus secured is one that the attached inventory of equipment and other personal property delivered to lessee is correct, and that the lessee will preserve and care for it and replace all that is broken, damaged or lost, and that all linens used for more than a year will be replaced new by lessee at the end of the term. Other covenants bound the lessee to maintain in good condition the interior of the hotel, plumbing, doors, windows, drains, and to preserve the property from liens for alterations or repairs. The $21,000 is always referred to as a "security" or a "deposit", and it is obvious that there were many things to which it might become applicable besides the tenth year's rent. In the event of destruction of the property, the owner not rebuilding, it was not to be applied to the tenth year's rent, but was to be returned. There is no suggestion of camouflage to avoid taxes. We have merely to construe the written lease to ascertain the intended status of the $21,000; and we think the intention was that it stand as a security for the lessee's performance in all respects of the lease, and that on June 3, 1944, what remained of it was to be applied on the last year's rent, unless the premises stood destroyed, when it was to be returned to lessee.

It was intended that lessor was not to hold it as a special deposit, but might use it as a general deposit, for he was to account for $1,000 per year as interest, in a credit against accruing rents. This does not destroy the character of the deposit as security, but the lessor's accountability for interest as well as for the principal emphasizes that character.

We are of opinion that no present gain was realized by this borrowing of the $21,000, and that the rent for the tenth year cannot be properly accrued as income because of it unless and until there is an application of the $21,000 security on June 3, 1944. Much can happen to prevent that. We are informed in argument, though it is no part of the record, that already the lessee has failed, and the lease is in default.

The judgment is reversed and direction given that the tax be redetermined in accordance with this opinion.