Clara G. ZACONICK, Appellant,

v.

Leo P. McKEE, as Trustee in Bankruptcy for Crescent Art Galleries, Inc., d/b/a Half Moon Art Galleries, Appellee.

No. 19373.

United States Court of Appeals
Fifth Circuit.

Nov. 16, 1962.

Robert Paul, Salley & Paul, for appellant.

Paul B. Anton, Abrams, Anton & Robbins, Hollywood, Fla., for appellee.

Before CAMERON, JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

Clara Zaconick, appellant, seeks a reversal of the judgment of the District Court affirming an order of the Referee in Bankruptcy, allowing the Trustee-Appellee, to recover $9,000.00 received by Mrs. Zaconick from the bankrupt pursuant to a written lease of certain real property. The Referee allowed Mrs. Zaconick to retain $2,250.00 of the $9,000.00 as administrative rent for three months occupancy at the rate of $750.00 per month. Mrs. Zaconick contends that the administrative rent should have been fixed at $1,500.00 per month, or the total sum of $4,500.00.

Mrs. Zaconick was the bankrupt's lessor under the terms of a five year business lease executed 23 September 1957. This lease provided:

"WITNESSETH, That the said lessor does this day lease unto said lessee, and said lessee does hereby hire and take as tenant under said lessor Rooms or Space consisting of the entire lands and premises situate and known as No. 1908 Hollywood Boulevard, situate in Hollywood, Florida, to be used and occupied by the lessee as store premises and for no other purposes or uses whatsoever, for the term of FIVE (5) YEARS, subject and conditioned on the provisions of this lease beginning the First day of October, 1957, and ending the First day of October, 1962, at and for the agreed total rental of FORTY-FIVE THOUSAND DOLLARS ($45,000.-00) Dollars, payable as follows: $1,-500.00 on January 1st, February 1st, March 1st, April 1st, May 1st and June 1st, during the years 1958, 1959, 1960 and 1961 and with regard to the rent for the year October 1st,

1961 to October 1st, 1962, it being the 5th Year of this Lease Agreement, Lessee does herewith deposit and deliver unto Lessor as security deposit in Trust with Lessor the sum of Nine Thousand Dollars ($9,000.-00) to be applied in January 1962 as payment in full for the said 5th Year rent for this Lease Agreement, as aforementioned. Receipt is therefore acknowledged by Lessor of the said $9,000.00 security deposit delivered by Lessee. Furthermore, as security and protection of and for Lessee, of the receipt of the said $9,-000.00 security deposit, it is herein agreed that this Lease Agreement shall be duly recorded forthwith in the proper recording office of the County of Broward and State of Florida."

The lease was in effect at the time of the voluntary filing of the Bankruptcy Petition. In due course McKee was appointed as Trustee of the estate.

The $9,000.00 was received by Mrs. Zaconick upon execution of the lease and is still in her possession. On April 8, 1960, the Trustee laid claim to the $9,-000.00 by filing a turnover petition. This was followed by the Referee's issuance of an order to show cause why turnover should not issue. A hearing was held on May 19, at which time Mrs. Zaconick pointed out that, although her attorney had been served with the order to show cause, the supporting petition had not been served and therefore, she was not fully prepared to respond. At the conclusion of the hearing, the attorney for Mrs. Zaconick moved to strike the order, and stated that the matter was improperly and summarily brought before the court. He asked the court for a final order of dismissal; and if denied, an opportunity for a further hearing. The Referee took the matter under advisement.

On June 22, 1960, Mrs. Zaconick filed her "Motion to Quash Order to Show Cause and to Direct Trustee to Institute Plenary Proceedings Against Movant". The Referee continued the original hearing, and an unreported hearing was held on July 7, 1960, at which time the Referee ruled against Mrs. Zaconick's motion to quash, permitting her to file an answer to the original order to show cause. This answer was filed August 17, 1960, and another hearing was set for September 22, 1960. At that time the Referee again took the matter under advisement. On October 27, 1960, the Referee entered an order in which he found the $9,000.00 to be "advance rental", to which the Trustee was entitled, and held that Mrs. Zaconick could only set off three months' rent at the rate of $750.00 a month, directing her to surrender $6,750.00 to the Trustee.

Mrs. Zaconick filed her petition for review supported by brief in the District Court. On January 20, 1961, the Trustee filed his answering brief and simultaneously filed two motions; claiming in effect that the previous attorney for the Trustee (a different attorney had been hired by this time) had made a "clerical mistake" in the order which he had submitted to the Referee for approval, in that the $9,000.00 was described as "advance rental", whereas the intention was to describe it as a "security deposit".

The District Court entered an order remanding that question to the Referee; and thereafter, the Referee entered his order of February 23, 1961, changing the October 27 order to read "security deposit", instead of "advance rental". Another petition for review was filed attacking the Referee's amended order of February 23. On September 26, 1961, the District Court heard the review petition and affirmed the Referee's actions without opinion. This appeal is addressed to that judgment.

Mrs. Zaconick contends that the court lacked summary jurisdiction to hear the Trustee's turnover petition. However, the objection of Mrs. Zaconick to the jurisdiction of the court was not filed until after she appeared and answered the Order to Show Cause. It was not filed until the only thing that remained to be done was the filing of memorandum briefs. We conclude that the court had summary jurisdiction over the turnover

proceedings. Nicholas v. Peter Pan Snack Shop, Inc., 5 Cir., 1958, 256 F.2d 349.

The Petition to Compel Turnover came about as a result of an election by Mrs. Zaconick to cancel the lease. This election was made under the terms and conditions of Paragraph 14 of the lease.[1] There is no issue as to the fact that Mrs. Zaconick did make her election to cancel the lease, or as to the fact that she did receive the $9,000.00. The chief issue upon which the case turns is whether the $9,000.00 received by Mrs. Zaconick was "advance rent" or a "security deposit" pursuant to the terms of the lease.

■■ If the $9,000.00 received is advance rent, then this money is admittedly the property of Mrs. Zaconick, the lessor, and remained such upon the tenant's default even if the default was before the expiration of the period for which the rent was paid. Casino Amusement Co. v. Ocean Beach Amusement Co., 101 Fla. 59, 133 So. 559 (1933); Housholder v. Black, 62 So.2d 50 (Sup.Ct.Fla.1952). Under Florida law, the landlord's cancellation of a lease because of a tenant's default does not affect his right to retain advance rent paid. Wagner v. Rice, 97 So.2d 267 (Sup.Ct.Fla.1957). In that event, the Trustee in Bankruptcy can have no greater right to the advance rent than has the defaulting bankrupt lessee. Sline Properties, Inc. v. Colvin, 4 Cir., 1951, 190 F.2d 401. However, if the $9,000.00 is deemed to be a security deposit to secure the performance of the covenants of the lease, then the lessor can retain such amount as will compensate him for actual damages, which must be proved; otherwise the money belongs to the lessee. Stenor, Inc. v. Lester, 58 So.2d 673 (Sup.Ct.Fla., 1951); Spach v. Johnina, Inc., 5 Cir., 1961, 291 F.2d 619.

■ In determining the category in which to place the money in question, we must look to the language of the lease. The dispute arises from the use of the term "security deposit" to describe the money; but the deposit was to be used to pay rent. We conclude that the proper construction of that provision of the lease is that the $9,000.00 was a guarantee or a security deposit to insure the *payment of the rent* for the last year; and as such, falls in the same category as advance payment of rent. We cannot agree with the contention of the appellee that the lease should have provided that the money was not for the payment of damages resulting from breach of covenants. When the instrument clearly states that the deposit was to be used "as payment in full for the said 5th year rent", it was not necessary to go further and say that it *was not* for the payment of damages for breach of covenants, or was not a penalty.

This Court dealt with prepayments under leases in Clinton Hotel Realty Corp. v. Commissioner, 5 Cir., 1942, 128 F.2d 968. In that case, by the terms of the lease, the money was to be held as security for the performance of many things other than the payment of the last year's rent:

"If the only agreement was that it should apply to the last year's rent, it would of course be rent paid in advance. But in that provision above quoted there is reference to other terms and conditions.

\* \* \* \* \* \*

"It was intended that lessor was not to hold it as a special deposit, but might use it as a general deposit, for he was to account for $1,000 per year as interest, in a credit against accruing rents. This does not destroy

[1] "If the Lessee shall become insolvent or if bankruptcy proceedings shall be begun by or against the lessee, before the end of the said term, the lessor is hereby irrevocably authorized at its option to forthwith cancel this lease, as for a default. Lessor may elect to accept rent from such receiver, trustee, or other judicial officer during the term of their occupancy in their fiduciary capacity without affecting Lessor's rights as contained in this contract, but no receiver, trustee or other judicial officer shall ever have any right, title or interest in or to the above described property by virtue of this contract."

the character of the deposit as security, but the lessor's accountability for interest as well as for the principal emphasizes that character."

It is interesting to compare the application of the $9,000.00 in the provision of the lease under consideration with the renewal option clause of the same lease [2] providing for the deposit of the same amount. The agreement to pay interest, unlike the provision before us, indicates that the money was to remain the property of the lessee; and accrued interest was to be used for his benefit and applied against the rentals due. As stated in Astor Holding Co. v. Commissioner, 5 Cir., 1943, 135 F.2d 47, 146 A.L.R. 993:

"The lessor was not required to account for interest on the payment, and for aught that appears the lessor could use the advance payment as his own money."

██ It is undisputed that the Trustee occupied Mrs. Zaconick's premises during January, February and March 1960, subsequent to the time Mrs. Zaconick chose to terminate the lease. Consequently, she is entitled to reasonable administrative rent during this period. In re Millards, Inc., 7 Cir., 1930, 41 F.2d 498. The Referee set this amount at $2,250.00 or $750.00 per month. This figure was presumably the average monthly rental for the entire year. Mrs. Zaconick contends that by the terms of the lease the rent for the months of January, February and March was $1,500.00 per month and that the proper administrative rent for those months should have been $4,500.00.[3] With this we cannot agree. While the method of payment may have called for payments during six months of the year and no payments during the others, it seems improper to conclude that the last six months were "rent free". The annual rental was $9,000.00. As a matter of fact, the lease plainly states that it is for a period of five years "for the agreed total rental of Forty-Five Thousand Dollars ($45,000.00)". The monthly rental is $750.00. Mrs. Zaconick is not entitled to any additional administrative rent.

Both appellant and appellee agree that appellant is entitled to attorneys' fees as provided in the lease. Some disagreement is evidenced as to the effort made to have such fees fixed and determined. That must be done upon remand.

For the reasons herein stated, we AFFIRM the finding of the Referee as to the administrative rent; REVERSE the Referee's finding as to the advance payment of $9,000.00; and REMAND for the purpose of fixing and determining reasonable attorneys' fees for the appellant in accordance with the lease.

Affirmed in part, reversed in part, and remanded with directions.

2. "TWENTY-FOURTH: Lessee, in consideration of this letting and the further sum of $1.00 to Lessor in hand paid, the receipt of which is hereby acknowledged, is herein and hereby granted the right and option to renew this Lease Agreement for a further term of FIVE (5) YEARS from October 1st, 1962, at the same rent and upon the same terms and conditions excepting, however, that upon the payment and delivery by Lessee of the security deposit of $9,000.00 for the 5th Year, i. e. for the Year October 1st, 1966 to October 1st, 1967, due and payable on January 1st, 1967, Lessee shall be entitled to and shall receive from Lessor, interest on this $9,000.00 security trust rent deposit at the rate of 2½% per annum and which annual interest shall be due and payable unto Lessee in the form of a credit as against the said annual rent, commencing with the Year October 1st, 1962, as is set forth herein, and accordingly the Lessee is herein authorized and permitted to deduct such interest from the rent each Year . . . .."

3. See quoted provision of lease as to rental payments, supra.