**In the Matter of RIVIERA CLUB, INC., d/b/a Cabaret Riviera, Bankrupt.**

**No. 26225.**

United States District Court
W. D. Missouri, W. D.

Jan. 24, 1967.

court prefers not to rest this decision on this ground.

Donald W. Giffin, and David Q. Reed, Esquire, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for petitioner (claimant) Broadway Valentine Center, Inc.

Phineas Rosenberg, Kansas City, Mo., for trustee, George V. Aylward, Jr.

BECKER, Chief Judge.

This is a petition by Broadway Valentine Center, Inc., a corporation, claimant below, for review of the order of the Referee in Bankruptcy (1) requiring the petitioner ("claimant" hereinafter) to pay over to the trustee of bankrupt $6,000.00, a rental security deposit made under a sublease between the bankrupt, as subtenant, and claimant, as sublandlord; (2) disallowing for any purpose a claim of petitioner for $3,250.00 as an expense of administration claimed for rent and expenses allegedly incurred by the receiver and trustee herein after adjudication as a bankrupt; (3) allowing on condition $1,776.64 of a claim for $1,-865.73 for rent and expense allegedly incurred prior to adjudication and asserted as a secured claim; and (4) denying a setoff against the disputed obligation to pay over the security deposit to the trustee alleged to arise from the payment of $10,000.00 by claimant to discharge mechanics' lien claims incurred by the bankrupt prior to the bankruptcy proceedings in improvement of the property subleased by claimant to the bankrupt.

The record upon which the petition for review is to be decided is agreed upon. It consists of the Referee's Certificate on the Petition for Review, and certain stipulated facts with respect to payment of the mechanics' and materialmen's liens after the hearing before the Referee. The findings of fact of the Referee have been accepted as correct except where found to be clearly erroneous.

*Basic Undisputed Facts*

The material basic undisputed facts are the following.

The bankrupt, Riviera Club, Inc., was a corporation organized to operate a "cocktail lounge serving hors d'oeuvres" and employing entertainers with national reputations. For this purpose it negotiated and executed on April 28, 1961, a sublease with the claimant of a portion of a shopping center leased by claimant from a third party and controlled by the claimant (Ex. 1). The sublease was for a term of 15 years from the date of completion for occupancy by claimant which was to be no later than August 1, 1961. The agreed rental was a minimum fixed payment of $1,000.00 per month plus 6% of the bankrupt's annual gross sales from the subleased premises in excess of $200,-000.00, payable semiannually. The premises were accepted by the bankrupt substantially in the existing unfinished condition. (A partition to be constructed by claimant was excepted.) The bankrupt agreed to improve the subleased premises and to purchase fixtures, furnishings, furniture, appliances, licenses, permits, supplies and other items all at a total cost of $115,634.00 therefor in accordance with a schedule attached to the sublease. (This schedule included an item entitled "Advnace (sic) Rental payment to Lessor" in the sum of $6,000.00.)

The obligation of the subtenant to expend this sum for improvements is found in paragraph 47 of the sublease which is as follows:

"LESSEE'S EXPENDITURES FOR IMPROVEMENT OF LEASED PREMISES:

"47. The attached Exhibit D, made a part hereof, sets forth the various items and classes of expenditures to be made by the Lessee in the improvement of the leased premises. Lessee agrees that it shall spend at least fifty per cent (50%) in cash of the amounts listed on Exhibit D, and it further agrees that in any event it shall expend in cash the sum of Fifty Thousand Dollars ($50,000.00). It is con-

templated by the Lessee that it shall take advantage of such long-term financing as may be available to it by the suppliers of furniture, fixtures and decorations, but the Lessee agrees that it will engage in no financing of any of its furniture, decorations, and/or fixtures from banks or lending institutions without the written consent of Lessor. The satisfaction of this requirement is a condition precedent to the effectiveness of this Lease, and if the same shall not be fully and completely satisfied within a reasonable time after the beginning date of the term hereof, then this Lease shall have no further validity, and the failure to satisfy this requirement shall be deemed an immediate default, and Lessee shall have no further rights with respect to the occupancy of the leased premises."

Paragraph 48 of the sublease provided for the payment of the $6,000.00 rental security deposit, which the Referee has ordered to be repaid by the claimant to the Trustee. It is as follows:

"PREPAYMENT OF SIX MONTHS' MINIMUM RENT:

"48. On or before August 1, 1961, Lessee shall deposit Six Thousand Dollars ($6,000.00) with Lessor as security for the payment of the fixed minimum rent for the six (6) months' period beginning February 1, 1971, and ending July 31, 1971. *Said sum shall be retained by Lessor in any and all events which are contemplated, prospective or possible under the provisions and conditions hereof,* but having made said deposit, Lessee shall not be required to pay fixed minimum rent for said six (6) months' period beginning February 1, 1971, and ending July 31, 1971, but only such percentage rent, if any, as shall otherwise be payable under the conditions hereof as aforesaid with respect to said percentage rent. The fixed minimum rent of One Thousand Dollars ($1,000.00) per month payable monthly in advance under the provisions hereof shall be payable beginning August 1, 1961, and

continuing on the first day of each month in advance thereafter, except as otherwise herein provided." (Emphasis added.)

Under date of August 2, 1961, the bankrupt delivered, and claimant accepted, a valid check for $6,000.00 to claimant in performance of its obligations to prepay six months' rent as a security deposit under paragraph 48 of the sublease. (Cl. Ex. 4; Stip. June 19, 1963.) It is this payment of $6,000.00 which the Referee ordered to be repaid to the Trustee of the bankrupt.

The bankrupt entered into possession of the subleased premises shortly after execution of the sublease and remained in possession thereof until December 27, 1961, at which time it filed its voluntary petition in bankruptcy herein, and was adjudicated a bankrupt. Immediately on taking possession under the lease the bankrupt began an improvement program in which it incurred obligations for improvements to the leased real estate. Over $18,000.00 in unpaid debts (incurred in the improvement program) secured by mechanics' and materialmen's liens existed at the time of adjudication of bankruptcy.

Since December 28, 1961, and until March 19, 1962, George V. Aylward, Jr., Esquire, has been continuously in possession of the leased premises as Receiver and later as Trustee of the estate of the bankrupt. The business of the bankrupt was not operated by the Receiver or Trustee after the adjudication of bankruptcy on December 27, 1961.

The rent, while the Receiver and Trustee were in possession, from adjudication in bankruptcy until March 19, 1962, computed under the sublease would have been $3,241.90.

On March 5, 1962, the bankrupt's first meeting of creditors was held. On March 19, 1962, the Trustee sold certain assets which had been since 1961 located in the premises leased from the claimant. Under the order of the Referee authorizing the sale of these assets any valid liens or encumbrances thereon would attach to the proceeds.

The mechanics' lien claims in excess of $18,000.00 have been compromised, settled and paid by claimant in the sum of $10,000.00. The compromise, settlement and payment of $10,000.00 by claimant occurred in 1965, nearly a year after the Referee entered the orders under review. Before this settlement the claimant was contesting the validity of the mechanics' and materialmen's liens. In May 1962, while contesting the validity of these liens, the claimant wrote the Trustee and each lien claimant a letter in substance as follows:

"Under date of April 28, 1961, our client, Broadway Valentine Center, Inc., subleased to Riviera Club, Inc., certain premises within the Broadway Valentine Shopping Center at Broadway and Valentine Road in Kansas City, Missouri. Said sublease granted to the Lessee, Riviera Club, Inc., the right to remove from the leased premises its trade fixtures and other property belonging to it. [*Herein was inserted the name of the individual lien claimant*] has filed a Mechanic's Lien statement which purports to be a lien upon the leasehold estate of Broadway Valentine Center, Inc., and the fee estate of its lessor Boot Hill Investment Company, Inc., for which we are also attorneys. That lien statement purports to secure the payment for certain improvements to which are, in fact, personal property. The purported improvements are not, in fact, improvements to the real estate nor were they authorized to be charged against the respective leasehold and fee interests of Broadway Valentine Center, Inc., and Boot Hill Investment Company, Inc. A new sublease of the premises in question has been executed by Broadway Valentine Center, Inc., to a lessee which desires possession of the premises on or before May 10, 1962. Broadway Valentine Center, Inc., has never made and does not now make any claim to any of this personal property although the owner thereof is obligated for the reasonable cost of storage of said property on the prem-

ises of Broadway Valentine Center, Inc., from December 27, 1961, to the date of its removal.

"Therefore, if you or either of you claim any right, title, or interest in or to said property, you are hereby notified and called upon to remove the same from the leased premises without delay."

These letters were written after a new sublease of the premises to a new subtenant had been executed by claimant.

### The Findings of Fact of the Referee

The findings of fact of the Referee on which the challenged orders were made are as follows:

"The evidence—oral, stipulated and admitted—establishes:

"1. Bankrupt was a corporation organized for the purpose of opening and operating a night club known as The Riviera in the Broadway-Valentine Shopping Center, Kansas City, Missouri. Claimant was Lessor and Bankrupt was Lessee of said night club premises.

"2. On April 28, 1961, Bankrupt and Claimant entered into the Lease and thereupon Bankrupt took possession of the leased premises and continued in possession until adjudicated a bankrupt on December 27, 1961, whereupon the Receiver (on December 27, 1961), and later the Trustee (on March 5, 1962) took possession of the leased premises and of the personal property contained therein without assuming said Lease (T. 43, 48); the Receiver and Trustee remained in possession of the leased premises *after* bankruptcy until March 19, 1962, under the circumstances hereinafter set forth; on March 19, 1962, the Trustee sold part of the personal property located in the leased premises and concurrently therewith surrendered the leased premises to Claimant together with the unsold part of such personal property still therein and Claimant accepted the same and took possession thereof under said circumstances.

"3. Upon taking possession of the leased premises Bankrupt immediately

began a remodeling and redecorating program which involved such items as improvements to the leased premises, trade fixtures, decorations and other personal property as listed in Schedule 'D' attached to the Lease; Bankrupt purchased such items on credit and spent in excess of $50,000.00 in part payment thereof; creditors having unpaid or partly unpaid claims for such items totalling $18,000.00 have filed mechanics' liens against Bankrupt and against the leased premises, which lien claims are the subject of a presently pending mechanic's lien suit.

"4. The $6,000.00 which Claimant received was deposited by Bankrupt pursuant to the provisions of said Lease (T. 47). Paragraph 48 thereof (Claimant's Exhibit 1 as supplemented by Stipulation filed November 13, 1963) provides:

" 'Prepayment of Six Months' Minimum Rent: On or before August 1, 1961, Lessee shall deposit Six Thousand Dollars ($6000.00) with Lessor as security for the payment of the fixed minimum rent for the six (6) months' period beginning February 1, 1971, and ending July 31, 1971. Said sum shall be retained by Lessor in any and all events which are contemplated, prospective or possible under the provisions and conditions hereof, but having made said deposit, Lessee shall not be required to pay fixed minimum rent for said six (6) months' period beginning February 1, 1971, and ending July 31, 1971, but only percentage rent, if any, as shall otherwise be payable under the conditions hereof as aforesaid with respect to said percentage rent. The fixed minimum rent of One Thousand Dollars ($1,000.00) per month payable monthly in advance under the provisions hereof shall be payable beginning August 1, 1961, and continuing on the first day of each month in advance thereafter, except as otherwise herein provided.'

"5. Bankrupt deposited said $6000.00 with Claimant on August 2, 1961 (T. 37); the letter of transmittal and the draft for $6000.00 were without any re-strictions therein or thereon and there were no restrictions as to the use of the money by Claimant other than those contained in paragraph 48 of the Lease (T. 8). In the words of the Lease said deposit was made 'as security for the payment of the fixed minimum rent ($1000.-00 per month) for the six (6) months' period beginning February 1, 1971 and ending July 31, 1971.'

"6. Bankrupt opened for business as as a Night Club on September 7, 1961, and almost immediately began losing money and continued to lose money until adjudication on December 27, 1961, approximately four months later; at the filing of the petition in bankruptcy, Bankrupt owed Claimant a debt incurred *prior* to bankruptcy in the sum of $1776.-64 (Stipulation—Ex. 2).

"7. Although Bankrupt's business was not operated *after* bankruptcy it has been stipulated that if Bankrupt had operated *after* bankruptcy to March 19, 1962, Bankrupt would have owed Claimant $3241.90 under said Lease (Stipulation—Ex. 3). Claimant asserts this is the amount due it as expense of administration because of such occupancy *after* bankruptcy.

"8. The Court Order referred to in the claim for $1865.73 was made for the purpose of facilitating the prompt sale of Bankrupt's assets and for that purpose said order transferred valid liens and encumbrances upon personal property in the Trustee's possession to the proceeds received from the sale of such property.

"9. Claimant's letter to the Trustee and to each lien creditor, dated May 8, 1962 (set out in Stipulation), admits or states: that the Lease granted Bankrupt 'the right to remove from the leased premises its trade fixtures and other property belonging to it'; that the 'lien statement (of each lien creditor) purports to secure the payment for certain improvements which are, in fact, personal property. The purported improvements are not, in fact, improvements to the real estate'; that a new lease has been executed by Claimant 'to a lessee

which desires possession of the premises on or before May 10, 1962'; and that Claimant 'has never made and does not now make any claim to any of this personal property although the owner thereof is obligated for the reasonable cost of storage of said property' from the date of adjudication.

"10. The Receiver contemplated selling Bankrupt's furniture and fixtures and assets located in the leased premises as quickly as he could (T. 46, 47, 51); shortly after the Receiver's appointment on December 27, 1961 (T. 57), Claimant's representatives stated to the Receiver that Claimant was anxious to rent the leased premises, as they were, intact and as a whole, to someone who would operate a night club therein; the Receiver was interested in making a sale in this manner because said personal property would bring considerably more left in the premises for a going business than if sold as salvage (T. 21, 47, 48, 51, 55, 57); the Receiver asked Claimant: 'if it is possible for him to have time to do this' and Claimant gave him 'the time' (T. 21):

"In such discussions, the Receiver told Claimant:

" 'I couldn't set here (in the leased premises) as the receiver and incur a great amount of rent; the court expects me to move from the premises as soon as I possibly could and make a sale for the benefit of the creditors of the estate and not incur undue expense' (T. 51). The Receiver testified that 'they (claimant) were interested it be sold, and so was I, for the highest price I could get, and I could get more money by selling it to somebody who would operate it than by selling it to a salvage buyer' (T. 51). The Receiver told Claimant: 'and I cannot tell you (claimant) * * * what the court might do as to rent. Under the law, as I understand it, (if rent couldn't be agreed upon) the landlord who petitions the court for rent is allowed a reasonable amount, generally, for the storage of the bankrupt's

assets if we aren't operating a business and, of course, we weren't operating' (T. 51, 52).

"In the absence of an agreement as to rent Claimant expected to receive only the reasonable cost of storage and stated so in its letter dated May 8, 1962 (Finding 9); the Receiver stated this to Claimant when Claimant granted the Receiver 'time' to sell bankrupt's assets as a whole for use as a going business pursuant to Claimant's request. (See supra this Finding 10); Claimant wanted to be sure that the purchaser of the personal property at the Trustee's sale would be acceptable as tenant to it as landlord (T. 47, 55) and would be financially responsible (T. 49); the Receiver and Trustee had no control over the leasing (T. 47); Claimant's attorney directed the Receiver to send prospects interested in purchasing said personal property to Claimant which the Receiver did (T. 57); all prospects so sent were unacceptable to Claimant as a tenant except Mr. Chapman (T. 47, 49, 50, 55, 57, 58); when Claimant notified the Receiver that Chapman was acceptable as a tenant (T. 55), the Receiver (on March 4) and the Trustee (on March 11) advertised said personal property for sale on March 19, 1962, and on said date sold a part thereof to Chapman, who was the highest bidder (T. 48, 50); the unsold part thereof, consisting of drapes, ornamental wrought iron, bandstand and carpet thereon, airconditioning unit, certain mirrors bolted to the wall and one or two loveseats bolted to the floor, was left in the premises (T. 50, 51); Claimant, as lessor, took possession of the leased premises on March 19, 1962, knew that the leased premises then contained said unsold personal property, occupied the same from that date, and in May 1962 re-leased said premises to Chapman at basically the same rental as in Bankrupt's lease; Chapman operated a night club therein using the part of such personal property sold to him by the Trustee and also the unsold part thereof left in said premises as stated above (T. 19, 20, 27, 28, 34, 37, 38, 39, 61).

748

"The Receiver and Trustee held the leased premises after bankruptcy until March 19, 1962, pursuant to the agreement resulting from foregoing conversations with Claimant (T. 54) and this fact was stated to Claimant (T. 54, 55).

"With respect to the unsold personal property left in the leased premises, the cost of the drapes was $1021.11 (T. 43), of the ornamental wrought iron was $1333.00 (T. 23, 42), and the value of the chairs (loveseats), wall plaques and a few mirrors was several hundred dollars (T. 22); there is no evidence as to the cost or value of the airconditioning unit and the bandstand and carpet thereon, also left in the leased premises (T. 39, 40)."

### The Conclusions of Law of the Referee

"Upon the foregoing facts, the Court makes the following conclusions of law:

"1. The Trustee is vested with title and right to possession of Bankrupt's property from the date of the filing of the petition in bankruptcy (11 U.S.C.A. 110a); Claimant requested and accepted the surrender of the leased premises, released the same, collected rent therefor from the succeeding lessee, and under the facts set forth in Finding 10 Bankrupt's lease became extinct by mutual agreement.

"2. Independently of said mutual agreement which extinguished the lease, said lease stood rejected by operation of law (11 U.S.C.A. 110b).

"3. Only personal property in the Trustee's possession is involved in these proceedings (Findings 2, 3, 9, 10); mechanic's liens on personal property not in possession of the lien claimant are not valid against the Trustee, under the Bankruptcy Act (11 U.S.C.A. 107c) and Bankrupt's personal property at bar was not subject to but was clear of all liens.

"4. The Referee's Order (referred to in the claim for $1865.73) was made for the purpose of an expedient and prompt sale of Bankrupt's assets and only transferred liens, *valid* as against the Trustee, to the proceeds received by the Trustee from the sale of such personal property; no valid liens exist at bar against the personal property so sold.

"5. The claim for $1865.73 was proved for $1766.64 and is allowable in that amount as a general claim subject to disallowance if Claimant does not refund the $6000.00 deposit received from Bankrupt, as hereinafter ordered, within the time required by the Bankruptcy Act (11 U.S.C.A. 93n).

"6. The claim for $3250.00 is not allowable as expense of administration or a general claim. Claimant requested and made an agreement with the Receiver and Trustee (beneficial to Claimant and Bankrupt's estate) with respect: (a) to the deferred occupancy of the leased premises after bankruptcy, (b) to the deferred sale of Bankrupt's assets by the Receiver, and (c) to the rent liability for such deferred occupancy. Under such agreement Bankrupt's personal property was to be sold as a going business unit and for such purpose Claimant granted 'the time' required to make the requested deferred sale (Finding 10); Claimant having requested and made such agreement and having granted 'the time' necessary to perform the same, under the facts set forth in Finding 10, impliedly agreed (and evidenced same by its conduct) that such deferred occupancy *after* bankruptcy would be without charge for rent or storage since the Receiver refused to defer a prompt sale thereof as was intended and refused to incur a great or undue amount of rent liability for deferred occupancy which refusal resulted in said agreement being made (T. 51, 54, 55, Finding 10); had no such agreement been made and a sale of Bankrupt's assets had been made promptly as was intended, the Trustee's liability under such circumstances would have been the reasonable cost for the storage of such assets and Claimant was told and understood this prior to making the aforesaid agreement (Finding 9, 10); notwithstanding such agreement, Claimant's acceptance and use of the unsold personal property (which was left in the leased premises, which Claimant received on

March 19, 1962, which Claimant used thereafter until May 1962 when the same was delivered by Claimant to its successor lessee of the leased premises for use therein, and which was used by such successor as part of the going business unit operated therein) considering the cost thereof constituted Claimant's acceptance thereof in lieu of the reasonable cost of the storage of Bankrupt's assets in the leased premises from the date of adjudication (Finding 10).

"7. The $6000.00 deposit made pursuant to paragraph 48 of the Lease (Finding 4, 5) should be refunded to the Trustee because: (a) it is a special deposit for the payment of future rent made 'as security for the payment of the fixed minimum rent for the six (6) months' period beginning February 1, 1971 and ending July 31, 1971'; (b) Claimant holds said deposit as Trustee for Bankrupt and Claimant is a fiduciary in possession thereof for the special purpose stated in said paragraph 48; (c) good conscience and equity require Claimant to refund said money so had and received for a special purpose when performance of the stated purpose is no longer possible since the Lease under which the deposit was made, was extinguished at the request and with the consent of Claimant; and (d) Claimant waived any claim to or right in said deposit under the facts stated in Findings 9 and 10 supra, when Claimant as Lessor requested and re-took possession of the leased premises under the circumstances shown in evidence, re-rented the same at basically the same rent and accepted rent therefor from the successor Lessee (Finding 10).

"8. Claimant has no setoff under the Bankruptcy Act (11 U.S.C.A. Sec. 108) against said $6000.00 fund: (a) for want of the existence of a mutual debt or credit between Bankrupt and Claimant; (b) for the reasons stated in Conclusion 7, supra; (c) because the sole ground stated as the basis for such setoff is the claim for damages for breach of any alleged agreement by Bankrupt *with* Claimant to pay lien claims referred

to in the setoff, which agreement is not shown to exist in the Lease or otherwise; (d) because the lien claims referred to in the setoff are claims between Bankrupt and third party lien claimants, are not claims between Bankrupt and Claimant; and such third party claims cannot be used collaterally as the basis of a setoff by Claimant for want of mutuality and the nonexistence of direct obligations between Bankrupt and Claimant; (e) because a claim for damages for breach of contract, which Claimant here alleges, or even a general indebtedness cannot be set off against a special deposit held for a special purpose because the relationship of debtor and creditor does not exist with respect to such special deposit; (f) because under paragraph 48 of said Lease, and especially after the Lease was extinguished at Claimant's request, the deposited fund was held by Claimant on trust and in a fiduciary capacity and a general indebtedness cannot be set off against a trust fund because the relationship of debtor and creditor does not exist with respect to such trust fund; and (g) because there is and can be no right of setoff with respect to transactions with the Receiver or Trustee."

### *Validity of the Order Requiring Return of the Security Deposit*

The challenged orders will be treated separately. The first challenged order is the order of the Referee requiring the claimant to repay the security deposit of $6,000.00 paid to claimant by the bankrupt under paragraph 48 of the sublease "as security for the payment of the fixed minimum rent for the six (6) months' period beginning February 1, 1971, and ending July 31, 1971".

The Referee concluded that the security deposit was refundable to the Trustee because (a) it was a special deposit for the payment of future rent; (b) claimant held the deposit as Trustee for the bankrupt for the special purpose stated in said paragraph 48; (c) equity and good conscience require return of the deposit "as money had and received

for a special purpose when performance of the stated purpose is no longer possible since the lease under which the deposit was made was extinguished at the request and with the consent of claimant"; and (d) claimant waived any claim to or right in the deposit when claimant requested and retook possession of the premises under the facts stated in findings of fact 9 and 10.

### Reversal of Order to Repay Security Deposit

It is concluded that claimant is entitled to have the order to repay the security deposit reversed and vacated for the following reasons.

■■ The effect of bankruptcy of the tenant upon the landlord's right to obtain a deposit of money as security for the performance of an obligation of the tenancy varies according to the (1) language of the contractual provisions; (2) its relation to other parts of the lease; (3) the effect of the state law; and (4) the conduct of the parties before and after bankruptcy. 4 Collier on Bankruptcy ¶ 70.44[5] 1379 and authorities therein cited. Accordingly where the deposit is clearly and properly designated as the equivalent of liquidated damages to be retained by the lessor upon termination of the lease during its term on account of the lessee's breach of covenant, the lessors are entitled to retain the deposit as against the bankrupt tenant's trustee. Burns Trading Co. v. Welborn, et al. (C.A.10) 81 F.2d 691, cert. den. 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394; In re Sherwoods, Inc. (C.A.2) 210 F. 754; Gleick, Rent Claims and Security Deposits in Bankruptcy, 18 Mo.Law.Rev. 1, l. c. 18.

■ Other variations of this principle permit the landlord to retain the security deposit if, as in this case, it is agreed that the sum deposited is treated as payment of rental for the last months of the lease. Sline Properties, Inc. v. Colvin (C.A.4) 190 F.2d 401; Zaconick v. McKee (C.A.5) 310 F.2d 12. This latter variation of the rule seems to be but

a method of designating the deposit as liquidated damages in the event of breach of the lease by the tenant, while guaranteeing credit for the deposit if the tenant performs the obligation to pay rent for all other months.

If the landlord acquires title to the deposit the acquisition of title reinforces the landlord's claim that the deposit is not a trust fund. Gleick, supra, 18 Mo. L.Rev. 1, l. c. 18. The designation of the deposit as the rental for the last month's rent may, under some circumstances, be decisive on this question. In re Sherwoods, Inc., supra; In re Banner (S.D.N.Y.) 149 F. 936.

Before proceeding to an application of these authorities to the facts of this case it should be noted that Sec. 63(a) (9) (Sec. 103 Title 11, U.S.C.) limiting recovery of the landlord for breach of unexpired leases (to the rent reserved for the next year) by a bankrupt is not involved here. Cf. 4 Collier on Bankruptcy ¶ 70.44[5] l. c. 1380, and cases cited in note 41. The reason is that the deposit of $6,000.00 is only one half of the minimum rental for the year following the breach by the bankrupt.

The provisions of paragraph 47 under which the deposit was made make it manifest that under no conditions "contemplated, prospective or possible" was the claimant to be obligated to return $6,000.00 to the bankrupt. It is true that the words "as security" were used in paragraph 47 to describe the deposit, but a "security deposit" may or may not be returnable upon bankruptcy of the tenant. See Collier, supra, ¶ 70.44[5], and Gleick, supra, and cases therein cited.

■ In this case Missouri law governs interpretation of the contract in determining whether the deposit of $6,-000.00 was returnable in the absence of breach of the lease by the landlord claimant (or in the absence of an agreed surrender of the lease, a matter which will be discussed later). Missouri law favors the claimant on this issue. Brown v. Wall, 186 Mo.App. 150, 176 S.W. 586. In that case under Missouri landlord and

tenant law the tenant was denied recovery for a deposit applicable to rent for the two months of a written lease for a definite term in the absence of breach of the lease by the landlord. An identical conclusion would be reached if general federal law were applied. Sline Properties, Inc., supra; 4 Collier on Bankruptcy ¶ 70.44, 1381 note 41.

To the extent that title to the deposit is material this record shows and the Referee properly found that the deposit of the $6,000.00 was transmitted without "any restrictions" thereon and "there were no restrictions as to the use of the money by Claimant other than those contained in paragraph 48 of the Lease". (Finding of Fact No. 5 supra.) The record shows without dispute that, unless agreed otherwise in writing, in paragraph 48, there was no intention to create a trust and no intention to restrict the use of the deposit by claimant. (Tr. 8, 9, 15, and 16.) Any finding of fact to the contrary would be clearly erroneous on this record; but none was made.

Under these factual circumstances it is concluded that the Referee's conclusions of law 7(a) and (b) that the security deposit was returnable are erroneous.

This leaves for review the questions of the soundness of the Referee's conclusions of law 7(b) and 7(c) in which he concludes that there was an agreed extinguishment (or agreed surrender as asserted in the briefs of the Trustee) of the lease and a waiver of the claimant's right to the security deposit "when Claimant as lessor, on March 19, 1962 requested and retook possession" thereof for purposes of making a sublease with a third party.

 Under Missouri law an agreed surrender of an unexpired lease with a security deposit for future rental may result in the loss of the right to retain the deposit. Under the usual form of lease with a security deposit, an agreed surrender of an unexpired lease will result in forfeiture of the security deposit according to Missouri law. Von Schleinitz v. North Hotel Co., et al. (1929) 323 Mo. 1110, 23 S.W.2d 64 l. c. 79;

Floro Realty & Investment Co. v. Steem Electric Corporation, et al. (C.A.8) 128 F.2d 338, and cases therein cited. (This case involved a debtor who filed a petition for reorganization which was approved; no presumptive or actual rejection of the unexpired lease intervened before the surrender.) Cf. Rauth v. Dennison (Mo.App.1962) 357 S.W.2d 201, and cases therein cited on the elements and effect of surrender of lease under Missouri law.

As noted hereafter no surrender occurred in this case, so it is not necessary to determine whether the sweeping language of paragraph 48 of the lease contemplated retention of the security deposit even in the event of surrender. It may be that the sentence therein entitling the claimant to retain the deposit "in any and all events which are contemplated, prospective or possible under the terms and conditions hereof" was intended to apply even in the event of surrender. No Missouri case on this point has been found.

The conclusion of law No. 1 of the Referee that there was an agreed surrender of the premises on March 19, 1962, is erroneous. It proceeds on a basic misconception of the legal relationship between the claimant and the Trustee on March 19, 1962. The Referee failed to recognize that as a matter of law on March 19, 1962, there was no landlord-tenant relationship between the Trustee and the claimant, and that therefore there was no relationship between them to be terminated by surrender agreement or to support an alleged waiver to retain the security deposit.

The landlord-tenant relationship under the sublease between the Trustee and the claimant was terminated by operation of law 60 days after the adjudication in bankruptcy and before March 19, 1962. (However the sublease was not thereby terminated as noted hereinafter.)

The Trustee's counsel stipulated at the hearing below, that the Trustee's interest in the lease was terminated by operation of law (Tr. 3). On the record this

stipulation was strictly in accordance with the facts and the law. The applicable statute was Section 70(b) of the Bankruptcy Act (11 U.S.C.A. Sec. 110 (b)) which reads as follows:

"b. Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: *Provided, however,* That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. A trustee shall file, within sixty days after adjudication, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee: *Provided, however,* That the court may for cause shown extend or reduce such period of time. Unless a lease of real property shall expressly otherwise provide, a rejection of such lease or of any covenant therein by the trustee of the lessor shall not deprive the lessee of his estate. A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable. A trustee who elects to assume a contract or lease of the bankrupt and who subsequently, with the approval of the court and upon such terms and conditions as the court may fix after hearing upon notice to the other party to the contract or lease, assigns such contract or lease to a third person, shall not be liable for breaches occurring after such assignment."

■ There was neither an acceptance nor a rejection of the sublease by the Trustee at any time in this case. In such circumstances the presumption of rejection of Sec. 70(b) is conclusive as a matter of law. Wiemeyer, et al. v. Koch, et al. (C.A.8) 152 F.2d 230, l. c. 234; In re Gravure Paper & Board Corp. (C.A.3) 234 F.2d 928.

■■ In the case under review the adjudication of bankruptcy occurred on December 27, 1961. The time for acceptance or rejection of the sublease was not changed by order of Court. As a matter of law under Sec. 70(b) the sublease was rejected on February 25, 1962, by inaction after the passage of 60 days from December 27, 1961. Thereafter there was no interest in the Trustee to support a surrender of the sublease, or on which to base a waiver of the right to the security deposit. In re Gravure Paper & Board Corp., supra, l. c. 930. (It is desirable here to note the continued existence of the sublease after rejection as a theoretical matter apart from the relationship of the Trustee and the claimant. Cf. 4 Collier on Bankruptcy ¶ 70.44[2] 1366–1369. But further pursuit of the questions raised thereby is immaterial to this case.) Moreover, voluntary re-entry of the landlord after rejection of the unexpired lease by the Trustee of the bankrupt tenant is not a surrender of the lease which affects the claim of the landlord for unpaid future rent. City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, l. c. 443–444, 57 S.Ct. 292, l. c. 297, 81 L.Ed. 324, l. c. 332; cf. Ten-Six Olive, Inc. v. Curby (C.A.8) 208 F.2d 117.

The suggestion of the Trustee's counsel that there was an earlier surrender by agreement shortly after bankruptcy and before February 25, 1962, is untenable and clearly erroneous because (1) it is contrary to a formal stipulation (Tr. 3); (2) it is not supported by any substantial evidence; and (3) it is unsound as a matter of law.

There is no substantial evidence in the record that prior to February 25, 1962, the lease and right to the security de-

posit were surrendered by agreement of the claimant and the Trustee or the Receiver. There is no express finding of fact by the Referee which supports such a claim, and on this record any such finding would be clearly erroneous. The most reasonable construction of the Referee's conclusion of law No. 7 that "the Lease under which the deposit was made, was extinguished at the request and with the consent" of the claimant, and that claimant "waived any claim to or right in said deposit * * * when Claimant or Lessor requested and re-took possession of the leased premises * * * re-rented the same * * * and accepted rent therefor from the successor Lessee" relates to March 19, 1962, when the Trustee relinquished possession. As noted above the lease had since February 25, 1962, been rejected by inaction. On February 25, 1962, the interest of the Trustee in the security deposit had been terminated.

There is no evidence which would support the finding of facts of a waiver of or estoppel to assert the right to retain the deposit. Neither the Receiver nor the Trustee were misled or caused to forego exercise of some right because of conduct of the claimant. Nor is there any evidence of any conduct of the parties prior to February 25, 1962, or thereafter which would support a finding that the claimant and the Receiver or Trustee impliedly agreed to a surrender of the lease and the right of claimant to retain the security deposit. Any such finding would be clearly erroneous on this record. After February 25, 1962, the Trustee continued to occupy the premises by sufferance of the claimant and without consideration.

### Affirmance of the Order Denying Claim for Rent after Bankruptcy

The record supports the finding of fact of the Referee No. 10 that the Receiver and Trustee was keenly aware of the potential liability as an administrative expense of the bankrupt estate for use and occupancy of the leased premises after bankruptcy to preserve the estate.

Sec. 64(a) (1) of the Bankruptcy Act. The Receiver and Trustee exacted an agreement to permit the occupancy of the premises including storage of the bankrupt's property without obligation for rent as an administrative expense. The claimant agreed to this in the mutual interests of the Receiver and Trustee and the claimant to bargain for sale of the personalty and for securing a new tenant while the properties were intact. Findings of fact 9 and 10. These facts support the Referee's conclusion of law No. 6 denying the claim for rental after bankruptcy as administrative expense. They also explain the continued possession of the Trustee until March 19, 1962, and the making of the new sublease thereafter.

 It is concluded that the findings of fact of the Referee that the claimant agreed to permit occupancy of the premises after bankruptcy without charge to the Trustee is supported by substantial evidence and not erroneous in any degree. For this reason the Referee's conclusion of law No. 6 disallowing the claim for rent and storage after bankruptcy is affirmed in all respects.

### Rulings on Review of Order Allowing a General Claim for Rent Incurred before Bankruptcy upon Condition that Security Deposit Be Repaid

 Since it has been held that the order of the Referee requiring claimant to repay the security deposit of $6,000.00 is clearly erroneous, the condition attached to the allowance of the general claim for rent and expense incurred before bankruptcy must also be held clearly erroneous, and reversed.

The claimant made this claim as a secured claim on the theory that it had a lien on personal property left by the bankrupt in the premises. This personal property was sold under order of Court without prejudice to claims of liens on the proceeds. Claimant asserts that it has a lien on the property because the personal property was subject to mechanics' and materialmen's liens under Missouri Statute Sec. 429.070. These

alleged liens are claimed somehow to inure to the benefit of the claimant.

The petition to set aside the order of the Referee denying the claim as a secured claim must be disallowed because in a brief filed November 20, 1963, the contention that this was a secured claim was withdrawn. The claimant requested that the claim be allowed as a general claim without prejudice to the right of the claimant to assert a lien on the proceeds of the sale of the personal property in an appropriate proceeding.

The Referee in conclusion of law No. 7 properly concluded that mechanics' liens on personal property are "not valid against the trustee" under Section 67(c) of the Bankruptcy Act (11 U.S.C.A. 107 (c)). Under the facts of this case the Referee was correct in applying Sec. 67 (e). There may be other reasons which would support the conclusion of the Referee on this point.

In connection with the claim for rent prior to bankruptcy it should be noted that claimant failed to file a claim for breach of the lease and for future rentals which to an extent limited by Sec. 63(a) (9) were allowable.

Suffering or securing an adjudication of bankruptcy by the tenant, followed by rejection of the lease, results in a breach of an unexpired lease, for which damages may be awarded. 3 Collier on Bankruptcy ¶ 63.31 and ¶ 63.32.

*Ruling on Order Denying a Setoff against the Obligation to Repay the Security Deposit*

The Referee denied a setoff by claimant against the obligation to repay the security deposit of $6,000.00. Since the order establishing the obligation to repay is reversed herein, this question has become moot.

In this connection it should be noted that claimant litigated the question of its obligation to repay the security deposit in a summary proceeding without raising the question of jurisdiction. It may have been entitled to insist on litigating this question in a plenary proceeding but has waived the right if it existed.

4 Collier on Bankruptcy ¶ 70.44[5] 1381 and note 45. Nothing said herein indicates a ruling on this waived question.

For the foregoing reasons, it is hereby

Ordered and adjudged that the Order of the Referee that claimant refund and pay to the Trustee the security deposit of $6,000.00 be, and it is hereby, vacated and reversed. It is further

Ordered that the Order of the Referee that the general claim for rent and expense prior to bankruptcy be disallowed in the event claimant does not repay the security deposit be, and it is vacated and reversed. It is further

Ordered and adjudged that the Order of the Referee that the setoff of $3,-250.00 be disallowed claimant be vacated as moot without prejudice to a further consideration thereof in the event this judgment is reversed on appeal.