George V. AYLWARD, Jr., Trustee, Riviera Club, Inc., d/b/a Cabaret Riviera, Bankrupt, Appellant,

v.

BROADWAY VALENTINE CENTER, INC., Appellee.

BROADWAY VALENTINE CENTER, INC., Appellant,

v.

George V. AYLWARD, Jr., Trustee, Riviera Club, Inc., d/b/a Cabaret Riviera, Bankrupt, Appellee.

Nos. 18778, 18786.

United States Court of Appeals Eighth Circuit.

Feb. 5, 1968.

Rehearings Denied March 1, 1968.

Phineas Rosenberg, Kansas City, Mo., for George V. Aylward, Jr., trustee, etc.

Donald W. Giffin and F. Lee Major, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for Broadway Valentine Center, Inc.

Before VOGEL, Chief Judge, and MEHAFFY and LAY, Circuit Judges.

PER CURIAM.

A bankruptcy trustee has appealed from the District Court's order denying it $6,000.00, the prepaid rent deposit paid by the sublessee-bankrupt, Riviera Club, Inc., pursuant to a sublease, with Broadway-Valentine Center, Inc., the sublessor. In the same proceeding, Broadway Valentine Center, Inc. (hereinafter Broadway) cross-appeals from the District Court's order denying it $3,250.00 of post-bankruptcy rent as an expense of administration under 11 U.S.C.A. § 104 (a) (1) (Bankruptcy Act § 64(a) (1)). For a more complete statement of the facts and referee's conclusions see Chief Judge Becker's opinion, In re Riviera Club, Inc., 280 F.Supp. 741 (W.D.Mo. 1967). We affirm the District Court.

Riviera Club, Inc., the bankrupt, was a corporation organized for the purpose of operating a night club. Broadway, the lessor of the Broadway Valentine Shopping Center in Kansas City, Missouri, subleased a portion of the premises for use as a night club to Riviera Club, Inc. This fifteen-year sublease was entered into by the parties on April 28, 1961. In addition to rental payment, the sublease provided for payment by Riviera Club, Inc., of $6,000.00 deposit.[1] Accordingly,

---

1. This paragraph reads as follows:
"PREPAYMENT OF SIX MONTHS' MINIMUM RENT:
"48. On or before August 1, 1961, Lessee shall deposit Six Thousand Dollars ($6,000.00) with Lessor as security for the payment of the fixed minimum rent for the six (6) months' period beginning February 1, 1971, and ending July 31, 1971. *Said sum shall be retained by Lessor in any and all events which are contemplated, prospective or possible under the provisions and conditions hereof,* but having made said deposit,

on August 2, 1961, Riviera Club, Inc., delivered and Broadway accepted a valid $6,000.00 check. However, on December 27, 1961, Riviera Club, Inc., went into voluntary bankruptcy. The bankruptcy referee ordered Broadway to return the $6,000.00 to the trustee of the bankrupt. The District Court vacated this order.

From December 28, 1961, until March 19, 1962, George V. Aylward, Jr., was in possession of the subleased premises, first as a receiver and later as trustee for the estate of the bankrupt. Riviera Club, Inc., was not operated after the date of the bankruptcy. The post-bankruptcy rent, for the period the receiver-trustee was in possession, computed in accordance with the terms of the sublease would have been $3,250.00. Broadway claimed this amount as an administration expense pursuant to § 64(a) (1) of the Bankruptcy Act (11 U.S.C.A. § 104(a) (1)). The bankruptcy referee found that the parties had agreed to suspend the rent during the above period of time (December 28, 1961, to March 19, 1962). The District Court concluded that this finding was supported by substantial evidence and not erroneous in any degree.

The trustee's contention on appeal is that there was an independent surrender agreement made and performed between the parties which under Missouri law results in forfeiture by Broadway of its right to keep the $6,000.00 rent deposit. See e. g., Floro Realty & Investment Co. v. Steem Electric Corp., 128 F.2d 338, 341 (8 Cir. 1942). The District Court determined that the referee was in error in finding an agreed surrender of the subleased real estate on or before March 19, 1962. We agree.

■ Section 70(b) of the Bankruptcy Act (11 U.S.C.A. § 110(b) (1952) appli-cable to the present proceeding [2] provided:

"(b) Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property; *Provided, however,* That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has been qualified, shall be deemed to be rejected. * * * "

The District Court correctly found that the landlord-tenant relationship in the case at bar terminated by operation of law sixty days after date of bankruptcy or on February 25, 1962. And as Chief Judge Becker, relying upon City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 444, 57 S.Ct. 292, 81 L.Ed. 324 (1936), stated: "The landlord's voluntary reentry after rejection of the unexpired sublease by the trustee of the bankrupt tenant is not a surrender of the sublease which affects the landlord's claim for unpaid future rent."

■ According to the plain language of the sublease, supra note 1, the $6,000.00 constituted advance rent for the last six months of the fifteen-year lease and "shall be retained by Lessor in any and all events which are contemplated, prospective or possible under the provisions and conditions hereof." Where the amount deposited was rent for the last months of the lease (see Zaconick v. McKee, 310 F.2d 12 (5 Cir. 1962)), or designated as liquidated damages (see Burns Trading Co. v. Welborn, 81 F.2d 691, 106 A.L.R. 285 (10 Cir. 1936)), the lessor is permitted to retain the deposit as against the trustee in bankruptcy. Sline Properties, Inc. v. Colvin, 190 F.2d 401 (4 Cir. 1951).

---

Lessee shall not be required to pay fixed minimum rent for said six (6) months' period beginning February 1, 1971, and ending July 31, 1971, but only such percentage rent, if any, as shall otherwise be payable under the conditions hereof as aforesaid with respect to said per-centage rent * * * " (Emphasis ours).

**2.** This provision was amended September 25, 1962, subsequent to the events of this case. See Pub.L. 87–681, §§ 9, 10, 76 Stat. 571.

The trustee urges that Broadway cannot retain the $6,000.00 deposit because its actions induced the trustee to change its position from selling the bankrupt's assets as soon as possible. This argument was adequately answered by the District Court as being entirely without foundation in the record.

Broadway also contends it is entitled to $3,250.00 or reasonable rent as an expense of administration pursuant to § 64(a) (1) of the Bankruptcy Act (11 U.S.C.A. § 104(a) (1)). There is ample support in the evidence for the District Court's finding that Broadway agreed to permit the receiver-trustee to occupy the subleased premises after the date of bankruptcy without obligation for rent as an administrative expense. The record shows that the receiver was interested in selling the bankrupt's assets located in the subleased premises as soon as he could and at the best possible price, and that Broadway desired to relet the premises intact to someone who would operate a night club therein.[3]

In view of our holding on the deposit of the $6,000.00, the pre-bankruptcy rent issue need not be discussed.

Judgment affirmed.

---

3. As the record indicates, both parties achieved their immediate goals because the purchaser at the March 19, 1962, sale of the bankrupt's assets was the next tenant of the premises and for a time did operate a night club therein.