In the Matter of The **PLYWOOD COMPANY OF PENNSYLVANIA**,

**The Plywood Company of Pennsylvania, Debtor, Appellant.**

**No. 18155.**

United States Court of Appeals, Third Circuit.

Argued March 2, 1970.

Decided April 24, 1970.

Alan David Silverman, Davis & Davis, Philadelphia, Pa., for appellant.

Edward L. Snitzer, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa. (Norris E. Gelman, Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, VAN DUSEN, and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The entangled problems so often present when rent claims are asserted in bankruptcy proceedings confront us in this case. Here, we are called upon to determine whether a landlord may retain security deposits and also recover additional damages for loss of future rental in a proceeding under Chapter XI, when a lease with a tenant contains a provision for security deposits, denominated "liquidated damages."

The Plywood Company of Pennsylvania entered into a five year lease for commercial property located in New Jersey, at a monthly rental of $750. Under the terms of the lease, Plywood deposited with the lessor $1,500 as rent security and $750 as security for damages, a total of $2,250, the equivalent of three months rent. The parties stipulated that the lease should be interpreted and enforced under the laws of New Jersey. The lease commenced on July 1, 1966,

and was to terminate June 30, 1971. On July 6, 1967, Plywood initiated proceedings for an arrangement under Chapter XI of the Bankruptcy Act. Cynwyd Investments, a co-partnership, acquired the property at a settlement held August 3, 1967.

When the petition under Chapter XI was filed, Plywood owed $150 in rent for the period July 1, 1967, to July 6, 1967, the date of filing the petition for an arrangement. The Receiver appointed during the arrangement proceeding remained in possession of the premises until September 30, 1967, when he surrendered the property. On October 28, 1967, Cynwyd rented the premises to another tenant. Under the terms of the new lease, which was for ten years, the monthly rental was $875, an increase of $125 above the rental provided in the Plywood lease. The new tenant was authorized to take possession immediately, but the rent was to commence January 1, 1968. The new tenant was to alter the premises in accordance with its own specifications. There was testimony that the tenant would not execute the lease unless there was a satisfactory provision for alterations, and unless his rent would not begin until January 1, 1968. There was also testimony that the increased rent over the period of the new lease was absorbed by the portion of the cost of alterations paid by Cynwyd.[1]

Cynwyd filed three claims in the proceeding:

1. $150 for rent accrued prior to the initiation of the Chapter XI proceeding (July 1 to July 6, 1967).

2. $2,100 for use and occupation by the Receiver (July 6 to September 30, 1967).

3. $2,250 for damages in lieu of rent from the date the Receiver surrendered the premises to the date rent commenced under the new lease (September 30, 1967 to January 1, 1968).[2]

The first two items were asserted as priority claims; the third as a general claim.

The Referee in Bankruptcy allowed these three claims, and refused to apply the $2,250 security deposits, paid to the lessor when the lease was executed, as a set-off of the first two claims, or to cancel the $2,250 general claim. The District Court affirmed the order of the Referee, and the appeal of Plywood followed.

Plywood does not dispute the validity of Cynwyd's first two claims. It contends, however, that the higher rental of the new lease precludes Cynwyd's claim for damages after September 30, 1967, since it sustained no damages, and that the security deposits, totalling $2,250, should be used to offset the first two claims.[3]

The Referee's decision denying Plywood credit for its security deposits against Cynwyd's claim for use and occupancy by the Receiver was based on the rationale that under § 68(a) of the Bankruptcy Act[4] there can be no set-off of claims which are not mutual, and that the claim of Plywood for the return of the deposits and that of Cynwyd for the use and occupation of the Receiver were not mutual since the use and occupation claim was an administrative expense which did not bear any relation to

---

1. The new lease provided that the lessee was to make the alterations, and that the lessor was to pay one-half the cost provided the lessor's contribution did not exceed $8,500. There was testimony that this amount was paid to the lessee.

2. This amount is equivalent to three months rent under the old lease.

3. When Cynwyd first filed its proof of claim, it demanded the equivalent of nine months' rent in the third category. Af-

ter Plywood filed an amended objection to the amount in the third category, Cynwyd reduced it.

4. Section 68(a) of the Bankruptcy Act, 11 USC § 108, provides: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

the lease. The Referee refused to deduct the security deposits from Cynwyd's general claim because he held that under the terms of the lease Cynwyd was entitled to retain the security deposits as liquidated damages and *also* to assert additional damage claims.

■ It is clear that the language of § 68(a) precludes a set-off between claims which are not mutual, and that the claim for use and occupancy of the Receiver and Plywood's claim for return of the security deposits are not mutual claims. S & W Holding Co. v. Kuriansky, 317 F.2d 666 (2d Cir. 1963). However, there is authority which permits a debtor's security deposit to be used to cancel a landlord's claim if the debtor is entitled to the return of the deposit and the landlord has no other claims against the debtor. S & W Holding Co. v. Kuriansky. *Cf.* In re Pal-Playwell, Inc., 334 F.2d 389 (2d Cir. 1964).

The crucial question in this case, however, is whether Plywood is entitled to the return of the security deposits held by Cynwyd. Under the terms of clause 39 of the lease, Plywood agreed "to put up a security deposit of One Thousand Five Hundred ($1,500) Dollars which [was] to be applied to the last two months of the five year term, or the last two months of any extension thereof." It also agreed "to place the amount of Seven Hundred and Fifty ($750.) Dollars as security for damage, which is to be refunded upon the *lawful termination* of the lease." (Emphasis added). Clause 37, however, provides for the termination of the lease upon the lessee's filing of a petition "in bankruptcy or insolvency or for the appointment of a receiver or trustee * * *." It further states that in such event * * Lessors, in addition to the other rights and remedies they have by virtue of any other provision herein or elsewhere in this lease contained, or by virtue of any statute or rule of law, may retain as *liquidated damages* any rent, security, deposit or monies received by

them from Lessee or others in behalf of Lessee." (Emphasis added).

■ The language of the lease precludes the claim of Plywood for the return of its security deposits. Once it filed a petition for an arrangement the lease *ipso facto* terminated and Cynwyd was entitled to retain the deposits as liquidated damages. A liquidated damage clause "fixes any recovery for damages at that amount." C. McCormick, Damages, § 152, p. 613 (1935). New Jersey has recognized liquidated damage clauses, and the Superior Court of that state has defined them as "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is *legally recoverable* as *agreed* damages if the breach occurs." (Emphasis added) Westmount Country Club v. Kameny, 82 N.J.Super. 200, 205, 197 A.2d 379, 382 (1964). It is no defense to the implementation of a liquidated damage clause to assert, as does Plywood, that the party in whose favor the clause runs has not sustained the equivalent amount in damages. "The injured party, though his actual damages may exceed the agreed sum, can recover no more, and his recovery cannot be diminished by showing his actual loss was less". C. McCormick Damages, § 152, p. 613.

■■ Instead of stipulating liquidated damages in a fixed sum or using a formula to ascertain such amount [*e. g.* Oldden v. Tonto Realty Corp., 143 F.2d 916 (2d Cir. 1944)], the lease provided that the security deposits were to be such amount. Since the deposits were equivalent to three months rent the parties evidently concluded this period would be a sufficient time to relet the premises. A security deposit is recognized as a proper measure of liquidated damages. *See e. g.* In re Riviera Club Inc., 280 F.Supp. 741 (W.D.Mo.1967), aff'd sub nom. Aylward v. Broadway Valentine Center, Inc., 390 F.2d 556 (8th Cir. 1968); Burns Trading Co. v. Welborn, 81 F.2d 691 (10th Cir. 1936) cert.

denied, 298 U.S. 672, 56 S.Ct. 936, 80 L. Ed. 1394. In the *Aylward* case the Eighth Circuit sustained the determination of the District Court that a security deposit did not have to be returned. In doing so, it construed the clause in the lease pertaining to the security deposit as a liquidated damage clause. The Court said, "Where the amount deposited was rent for the last months of the lease * * * or designated as liquidated damages * * * the lessor is permitted to retain the deposit as against the trustee in bankruptcy". 390 F.2d at 558. *See also* Gleick, Rent Claims and Security Deposit in Bankruptcy, 18 Mo. L.Rev. 1, 18 (1953).

■ One way to contest a liquidated damage clause is to contend that a clause labeled "liquidated damages" is in fact a "penalty" and therefore void and unenforceable. Although Plywood has not made this argument, we have, nonetheless, reviewed the question and find no reason to consider the three months' security deposit a penalty. *But cf.* Spach v. Johnina, Inc., 291 F.2d 619, 620 (5th Cir. 1961) cert. denied 368 U.S. 985, 82 S.Ct. 599, 7 L.Ed.2d 523. The criteria for distinguishing liquidated damage clauses and penalty clauses are quite general. A penalty is said to be fixed not as a "pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach". Westmount Country Club v. Kameny, 82 N.J.Super. at 205, 197 A.2d at 382. In addition, the liquidated damages stipulated must not be disproportionate to the probable loss judged as of the time of making the contract. Suburban Gas Co. v. Mollica, 131 N.J.L. 61, 34 A.2d 892 (1943); Borden Co. Pioneer Ice Cream Div. v. Manley, 127 N.J.L. 461, 23 A.2d 281 (1942); 218–220 Market Street Corp. v. Krich-

Radisco, Inc., 124 N.J.L. 302, 11 A.2d 109, 111 (1939).

■ The Plywood lease reserves to lessor other remedies for breach resulting from lessee's petition under the Bankruptcy Act. Cynwyd in fact has claimed further damages "in lieu of rent", and contends it is entitled to both such claim and the deposits. This attempt at a double recovery has indicia of a penalty.

It is our interpretation of the lease, however, that the deposits totalling three month's rental constitute liquidated damages within the meaning of that term. Any other claim for damages in lieu of rent for a breach of the lease because of Plywood's petition for an arrangement may not be asserted. The other "rights and remedies" reserved under the lease do not include recovery of additional damages for the period the premises were vacant.

Cynwyd contends that New Jersey permits a landlord to retain the security and to recover additional damages as well, and cites for this proposition Piene v. Eichhorn, 104 N.J.L. 286, 140 A. 276 (1928). In *Piene* the Court construed a clause in a lease stipulating that the security deposit was liquidated damages as one which was intended to apply to breaches of covenants in the lease other than the covenant to pay rent, and that the lessor could therefore recover additional damages for breach of the covenant to pay rent. The Plywood lease is clear: the liquidated damage clause refers to default because of the filing of a petition in bankruptcy, insolvency or for the appointment of a receiver or trustee by the lessee. We do not, therefore, believe *Piene* is controlling.[5]

---

5. *Piene's* vitality may be questionable since it has not been cited in subsequent New Jersey cases. Other New Jersey cases are unclear whether a landlord can retain a security deposit and also claim damages of future rent. *See* Nickolopulos v. Lehrer, 132 N.J.L. 461, 40 A.2d 794 (1945) cert. denied, 325 U.S. 876, 65

S.Ct. 1556, 89 L.Ed. 1994; Heyman v. Linwood Park Inc., Section Four, 41 N.J. Super. 437, 125 A.2d 345 (1956); Burnstine v. Margulies, 18 N.J.Super. 259, 87 A.2d 37 (1952). Pable v. Zebrowski, 15 N.J.Super. 261, 83 A.2d 352 (1951). These cases, however, are not directly in point since they do not involve a situa-

The Bankruptcy Act does not provide the landlord with the right to collect damages twice. The provisions in the Act allowing a landlord to prove a claim arising from "the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease", under either § 63(a) (9) or § 353 (11 U.S.C. § 103, 11 U.S.C. § 753), do not authorize a landlord who has provided for liquidated damages in the event of bankruptcy to obtain *additional* damages. These sections allow recovery for damages so long as such damages do not exceed the equivalent of one year or three years rent, respectively. These sections cannot be construed as a "statute or rule of law", as provided in the lease, which would give Cynwyd the additional remedy contemplated and the right to collect the same damages twice.[6]

Because of our decision that Cynwyd has the right to retain the security deposit as liquidated damages, the case of S & W Holding Company v. Kuriansky, *supra,* relied on most heavily by Plywood, is not apposite. In *S & W Hold-* *ing,* the debtor also sought to have a security deposit cancel the claim for the trustee's use and occupation expense. After stating that the two claims were unrelated the court said:

"Of course, where the lessor has no other claim against the debtor, it may often be simpler to allow him to apply the deposit against his claim for use and occupancy, with the trustee paying any balance of use and occupancy or recovering any surplus of the deposit as the case may be, rather than to require the lessor to return the deposit and the trustee to pay him the full allowance." 317 F.2d at 668.

Inherent in the rationale of *S & W Holding* is the premise, not applicable to the present case, that on the cancellation of the lease the tenant was entitled to the return of the deposit. Unlike Cynwyd, S & W did not assert the right to retain the deposit as liquidated damages, and in fact withdrew its damage claim for future rent.

Since the liquidated damage clause eliminated the need to prove damages and since we have held that Cynwyd

tion where the security deposit was stipulated as liquidated damages,—a distinction that was noted in Pable v. Zebrowski.

6. There may be doubt whether § 63(a) (9) or § 353 applies to the present case. Both § 63(a) (9) and § 353 speak of damages from "rejection" of the lease. In the present case, the lease terminated under an *ipso facto* clause when the petition was filed. Prior to the addition of these sections to the Bankruptcy Act, a landlord whose lease did not automatically terminate by bankruptcy could not prove a claim for loss of future rent. Manhattan Properties Inc. v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 (1934). If the lease had an *ipso facto* termination clause and a provision for damages, the landlord had a provable claim. Irving Trust Co. v. Perry, Inc., 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379 (1934). For a discussion of the history of the Chandler Act amendment to the Bankruptcy Act see 3A Collier on Bankruptcy. ¶ 63.31, 63.32, pp. 1914–32. (14th Ed.1969); Gleick, Rent Claims & Security Deposits in Bankruptcy, 18 Mo. L.Rev. 1 (1953). The authorities maintain that § 63(a) (9) and § 353 apply where there is an *ipso facto* termination of the lease as well as a rejection of the lease by the trustee or receiver. Oldden v. Tonto Realty Corp., 143 F.2d 916 (2d Cir. 1944); 3A Collier ¶ 63.33, p. 1337; 9 Collier ¶ 7.15, p. 79. In *Oldden* the Second Circuit held that a landlord who held a security deposit must deduct the amount of that deposit from its total provable claim for liquidated damages, which is limited to one year's rent by § 63(a) (9). It is immaterial to the present decision which section is applicable because of our decision that in view of the liquidated damage clause and the security it retains, Cynwyd may not assert an additional claim for damages. "If damages or indemnity are not based on rejection but on a covenant that bankruptcy constitutes a breach and entitles the landlord to certain damages, such covenant remains the primary source of the landlord's right as recognized and modified by § 63(a) (9) * * * [§ 63 (a) (9)] does not create an entirely new claim." 3A Collier ¶ 63.33 p. 1938.

may not assert the claim for damages in lieu of rent, it is actually unnecessary to consider whether Cynwyd in fact suffered damage. There is, however, testimony that the increased rent on the new lease was needed to pay for alterations necessitated by the new tenant. If the increase covered this amount, Cynwyd then lost three months' rent from October 1, 1967 to January 1, 1968. Although the Referee did not make a specific finding on this point, it is implied in his decision permitting the claim.

An order will be entered in accordance with this opinion affirming that portion of the District Court's order allowing Cynwyd's claims for accrued rent in the amount of $150 and use and occupancy expenses in the amount of $2,100, refusing to permit the $2,250 deposits as a set-off of these claims, and reversing that portion of the order allowing Cynwyd's general claim in lieu of rent.