Lawner *v.* Engelbach, Appellant.

312

Argued November 21, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry R. Kozart,* with him *Weissman & Kozart,* for appellant.

*Marvin J. Levin,* with him *Freedman, Borowsky and Lorry,* for appellees.

OPINION BY MR. JUSTICE JONES, January 15, 1969:

This is an action for the conversion of a diamond ring instituted in the Court of Common Pleas No. 6 of Philadelphia County. The crux of the case is the total disparity in the testimony of Herman Lawner, vendee (Lawner),[1] and Charles Engelbach, vendor (Engelbach), as to the terms of the sale involving the diamond ring. The court below chose to believe Lawner and it was within the province of the trial court to judge the credibility of the witnesses and to weigh their testimony. *Kalyvas v. Kalyvas,* 371 Pa. 371, 376, 89 A. 2d 819 (1952); *Hindman v. Hindman,* 209 Pa. Superior Ct. 157, 224 A. 2d 809 (1966). At the appellate level it is not our duty to find the facts but to determine whether there is evidence in the record to justify the trial court's findings of fact. 9 Standard Pennsylvania Practice, ch. 40, §107, at 430 (1962). We find there is basis in the record for the court's

---

[1] Although Harriet Lawner is the plaintiff-appellee of record, the ring was actually purchased jointly by Mrs. Lawner and her husband, Herman. Mrs. Lawner was not called to testify at the trial below.

findings of fact as to the terms of the sale and we will not overturn the court's decision to give credence to Lawner's testimony.

Since the issues in this case are primarily factual and since we have adopted the findings of fact of the court below, we will quote those findings directly: "The foundation for the events rising here were laid in 1956, when [Lawner], an individual, purchased, for Four Thousand Dollars ($4,000.00), a diamond ring from [Engelbach], a diamond merchant. The ring purchased in 1956, was appraised and insured for Ten Thousand Dollars ($10,000.00) and was in possession of [Lawner] until November, 1964, when she returned to [Engelbach] with her husband to buy a new ring. At [Engelbach's] place, [Lawner] saw a ring she would have. It was offered at Fifteen Thousand Dollars ($15,000.00), but it burned with more than gem like flame, as it was represented by [Engelbach] as being worth Thirty Thousand Dollars ($30,000.00). Indeed [Engelbach], *to fortify this attractive proposition, offered to rescind the sale were the ring he offered not appraised at Thirty Thousand Dollars ($30,000.00)*. In the presence of such bargain, [Lawner] gave her ring and three (3) post-dated checks, which totalled Nine Thousand, Three Hundred and Fifty Dollars ($9,350.00) and instantly repaired to a reputable appraiser, with the new ring. The bubble swiftly burst. The appraiser valued the new ring at only Fifteen Thousand Dollars ($15,000.00). Back went [Lawner] to [Engelbach], with the sallow news, her post-dated checks were returned, the sale rescinded, as promised but her old ring was not returned, nor ever has it been. [Engelbach] said he had consigned it out and would return it. Meanwhile, he tendered [Lawner] a check for Five Thousand Dollars ($5,000.00). [Lawner] says the check was a security deposit pend-

ing return of her old ring. [Engelbach] says it was full payment for a ring bought and sold. This action is aimed at the heart of that controversy. [Lawner] seeks in conversion, the value of her old ring, the fair replacement value of which she asserts to be Twenty Thousand Dollars ($20,000.00) and as [Lawner] asserts fraud, she seeks punitive damages in the sum of Thirty Thousand Dollars ($30,000.00). [Engelbach] saith he bought and paid for the old ring and there the matter should end." (Emphasis added). The court below found in favor of Lawner in the sum of $15,000.00, including the $5,000.00 check already paid by Engelbach.

While we are bound by the trial court's findings of fact, we are not bound by its legal conclusions drawn from those facts. *Kemp v. Majestic Amusement Co.,* 427 Pa. 429, 432, 234 A. 2d 846 (1967). The court concluded from the above recited facts that when Lawner returned the ring to Engelbach, the parties agreed on a rescission of the sale. Technically, this is not an accurate characterization of the facts. First, it is difficult to justify the conclusion that Engelbach agreed to rescind the sale since there is little, if any, concrete evidence in the record that Engelbach still had the old ring when the Lawners returned the new ring. It is hardly likely that Engelbach would have agreed to rescind the sale and promise to return the old ring which he no longer had. Second, since this case involves the sale of personal property, the controlling law is Article 2 of the Uniform Commercial Code (Act of April 6, 1953, P. L. 3, §§2-101 et seq., as amended, 12A P.S. §§2-101 et seq.). In situations such as this the Uniform Commercial Code has largely abandoned the concept of "rescission" in favor of the concept of "revocation of acceptance". See: Pennsylvania Bar Association Notes, Section "a," following UCC §2-601; P.L.E.,

Sales, §71, at 512. Therefore, when Lawner returned the new ring, she was merely revoking her acceptance of the original sale, as she had a right to do under the terms of the sale as found by the court below, and was not entering into a new agreement with Engelbach to rescind the sale. We feel that such characterization of the facts more clearly comports with what actually transpired since a revocation of acceptance, unlike a rescission, does not require the assent of the seller.

There are at least two theories under the Uniform Commercial Code by which Lawner could have rightfully revoked her acceptance. One way of viewing the facts is to conclude that Engelbach made an express warranty that the ring would appraise for $30,000.00 (UCC §2-313(1)(a)),[2] and that since the ring did not live up to the warranty, Lawner had the right to revoke her acceptance of the ring under UCC §§2-711(1)[3] and 2-608(1).[4] A perhaps more accurate characterization of the facts in this case involves the right given to all buyers under the Uniform Commercial Code to inspect goods before purchase. UCC §2-513(1).[5] Inspection in a case involving valuable gems entails an appraisal by an expert. Therefore, we conclude that

---

[2] "(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

[3] "(1) Where . . . the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, . . . the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid. . . ."

[4] "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him. . . ."

[5] "(1) . . . where goods are tendered . . . the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner. . . ."

the sale in this case was made subject to the right of Lawner to have the ring appraised, and that if the ring did not live up to expectations, she had the right to revoke her acceptance under UCC §2-608(1)(b).[6] Under either theory, Lawner had the right to revoke her acceptance under UCC §2-608 and was entitled to receive whatever value she had given Engelbach in payment for the new ring under UCC §2-711(1).

The second issue in the case is the determination of what value Lawner gave Engelbach in exchange for the new ring. More precisely, the question is how much the old ring was worth when Lawner traded it in on the new ring. The trial court made two determinations in order to reach its verdict of $15,000.00. First, it determined that the wholesale value of the ring was $7,500.00 and it based this conclusion largely on the testimony of two diamond dealers. Second, it determined that the mark-up on diamond rings was 100% (again based on the testimony of the appraisers and that Lawner should be entitled to the retail value of $15,000.00 instead of the wholesale value of $7,500.00. We need not consider this second issue for we hold that the trial court's conclusion that the wholesale value of the old ring was $7,500.00 was speculative and conjectural and that there is insufficient evidence in the record to justify this conclusion.

One of the appraisers who testified for Lawner, Jerome Atlas, had appraised the ring when the Lawners first bought it in 1956 and at that time he appraised the ring for insurance purposes at $10,000.00. He testified that the insurance value approximated the

---

[6] "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it. . . . (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

retail value. He had not, however, seen the ring since 1956. He estimated that the ring was now worth about $17,000.00, but this conclusion was based merely on what he considered to be the average increase in the value of diamond rings between 1956 and 1964. Since Mr. Atlas had not seen the ring since 1956, he could hardly qualify as an expert on the value of the ring in 1964.

Lawner's second appraiser, Bernard Weiler, appraised the *new* ring at $15,000.00. He has never seen the old ring. He was asked his estimate of the value of the *old* ring but could only testify in hypothetical terms since he has never seen the ring. The testimony of these gentlemen does not convince us that the wholesale value of the old ring was $7,500.00. Moreover, we conclude that the trial court's holding is even more conjectural in light of the following facts which were not contradicted below. First, Engelbach sold the ring in question to another diamond dealer for $5,300.00 and this dealer testified that he then sold the ring for $5,500.00. Here are at least two diamond dealers who apparently did not consider that the ring was worth $7,500.00. Second, the trial court found as a fact that Engelbach offered to sell the new ring for $15,000.00. Since Lawner agreed to pay $9,350.00 in cash, in addition to the old ring, the parties must have felt that the old ring was worth in the neighborhood of $5,000.00. Third, Mr. Lawner had the old ring insured in 1964 for $6,500.00 which is $3,500.00 less than the insured value Mr. Atlas placed upon the ring in 1956. In short, the record demonstrates that the evidence does not justify the trial court's conclusion that the old ring had a wholesale value of $7,500.00. Since it is our responsibility to grant a new trial where we find that the evidence does not justify and sustain the conclusions of the court below (*Massachusetts*

*Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 340 Pa. 253, 263-65, 16 A. 2d 444 (1940), we must reverse the judgment and remand the matter to the court below for a new trial limited to a determination of the value of the old ring.

Judgment reversed and new trial granted.