## Church v. Duffy

*James R. Flick*, for plaintiff.
*Frank J. Wesner, Jr.*, for defendant.

WRIGHT, *J.*, July 8, 1980—A complaint in trespass was filed by plaintiff Richard Church, the buyer, against defendant Thomas Duffy, individually and trading as Cardinal Printing, the seller. The gravamen of the complaint alleges that defendant falsely and fraudulently induced plaintiff to enter into an agreement of sale to purchase defend-

ant's business. The basic allegation is that defendant told plaintiff that the business was grossing $150,000. Fraudulently induced, plaintiff paid on account the sum of $10,000. Plaintiff further alleges that the above financial representations were false and, as a result, he was not able to obtain appropriate financing. Unable to go through with the sale, plaintiff demands return of his moneys, to include $200 in attorney's fees, the fee for the preparation of a supplemental agreement.

Defendant responds by suggesting that he never represented that his business had a gross and net income as alleged, that the business records were open to plaintiff, and that the written agreement of sale contains provisions that the buyer does not rely upon any representations as to ". . . past, current or prospective profits or business volume," and that the ". . . agreement represents the entire agreement between the parties. . . ."

The case was tried by a judge without a jury. A decision was filed under date of August 2, 1979, concluding, in pertinent part, the following:

1. Plaintiff had not proven fraud by defendant in inducing plaintiff to enter into the agreement of sale by clear, precise, indubitable and convincing evidence.

2. Defendant is entitled to retain out of the sum of $10,200 any monetary damages actually suffered.

3. Since no evidence was introduced by plaintiff or defendant as to damages suffered, a further hearing would be allowed to determine defendant's actual damages.

Exceptions were timely filed by both plaintiff and defendant. This opinion is written in disposition of those exceptions. Plaintiff excepts to the court's

finding that fraud was not established, the basic premise of his case. Defendant, on the other hand, excepts to the court's finding that defendant was not to retain any of the $10,200 unless actual damages were proven.

With regard to plaintiff's argument that fraud was indeed proven, we have reviewed the testimony produced at trial with extreme care and we must sustain the findings in that regard. We are not convinced that plaintiff proved fraud by clear, precise, indubitable and convincing evidence. The trial judge's findings are supported by the evidence and the record.

The findings show that plaintiff had worked for ten years in defendant's business establishment. During that time, plaintiff and defendant did indeed develop a special relationship, almost a father-son relationship. This allowed plaintiff to become fully familiar with defendant's business, even to the point that defendant would entrust its operation to plaintiff. In 1973 or 1974 defendant approached plaintiff with the idea of selling the business. Plaintiff's interest in such a sale culminated in an agreement of sale in September, 1975. The initial agreement entered into on September 28, 1975 set forth a purchase price of $150,000 with no contingencies for securing financing. Plaintiff was in possession of the agreement for two or more weeks prior to signing it, and had read and reviewed the entire agreement with his family at least two to four times.

The agreement provided for a purchase price of $150,000, $10,000 payable at signing, $30,000 payable on or before December 13, 1975, $10,000 payable on January 8, 1976, and the balance of $100,000 to be secured by a ten year purchase money mortgage. Settlement was to take place on

December 12, 1975. If plaintiff defaulted prior to January 1, 1976 on any of the terms and provisions of the agreement, defendant's sole and exclusive remedy would be the retention of all deposit moneys paid by plaintiff.

Three specific paragraphs of the agreement must be set forth herein with particularity. They are as follows:

"11. (a) Buyer represents and agrees that he has inspected the business premises and the furniture, machinery, equipment and trade fixtures, *and does not rely on any representations of Seller* or any agent of Seller, *as to past, current or prospective profits or business volume.*" (Emphasis supplied.)

"14. This agreement shall be binding upon the heirs, administrators, successors and assigns of the parties. *This agreement and any accompanying instruments and documents include the entire transaction between the parties and there are no representations, warranties or covenants or conditions, except those specified herein or in accompanying instruments and documents.*" (Emphasis supplied.)

"10. Buyer, at his expense, at any reasonable time prior to closing shall have the right to inspect, or to have inspected by a Certified Public Accountant as he may designate, the books and records of Seller's business."

Following the provisions of paragraph 10, plaintiff had his former attorney inspect the books on October 9, 1975. The attorney told plaintiff that everything looked all right. Plaintiff then told defendant's accountant that defendant's financial records were satisfactory and that no additional financial information would be required.

Plaintiff was unable to secure financing before December 13, 1975, the date upon which the $30,000 was due and payable. A supplemental agreement was concluded on December 18, 1975, by which terms plaintiff released the $10,000 downpayment before the forfeiture date under the agreement in return for an extension of time within which to secure financing. At the time of entering into the supplemental agreement, plaintiff was fully aware of the financial condition of the business, including the fact that total gross sales and net profits for the years 1973 and 1974 had never reached $150,000 in sales, nor $50,000 in profit.

It is important to note that between December, 1975 and March, 1976 plaintiff and his family operated defendant's business without any question or complaint as to defendant's financial records or the condition of the business. Access to the records was neither prohibited nor discouraged.

Upon plaintiff's failure to go to settlement on March 12, 1976, the deposit of $10,000 was forfeited to defendant who at the same time, took back the running of Cardinal Printing. Plaintiff went back to his position as general manager, at which position he remained until May of 1978.

Lastly, it must be observed that paragraph 19 of the agreement of sale entered into by the parties on September 28, 1975 provides as follows:

"In the event that Buyer is default (sic) in any of the terms and provisions of this Agreement prior to January 1, 1976, then Seller, as his sole and·exclusive remedy, shall retain all deposit monies paid by Buyer. In the event that Buyer is default (sic) in any of the terms and provisions of this Agreement subsequent to January 1, 1976 for thirty days, all amounts unpaid shall at the election of the Seller,

become immediately due and owing. In the event that Buyer is unable to pay all amounts due and owing, Seller shall have the immediate right to assume operation of the business. Buyer shall not be relieved of their (sic) obligations under this Agreement, and Seller shall have the right to liquidate the assets of the business at his election. Seller shall also have the right to execute on the Judgment Note which is attached hereto and made a part hereof. Seller's rights enumerated in this paragraph are cumulative and in addition to any other rights he may have."

Further, paragraph 3 of the supplemental agreement entered into on December 18, 1975 provides as follows:

"In the event that Richard Church is in default in any of the terms and provisions of the Agreement as extended or this Supplemental Agreement on March 12, 1976, then Thomas Duffy shall retain said $10,000.00 as his sole exclusive remedy regardless of the fact that he, the said Thomas Duffy, may have breached any of the terms of the Agreement or Supplemental Agreement and Richard Church hereby waives any and all rights that he may have under said Agreement or Supplemental Agreement."

It was the duty of the trial court sitting without a jury to judge the credibility of the various witnesses and thereafter to weigh their testimony before making its decision in this matter. When doing so, the trial judge decides, as does a jury, findings of fact from the evidence presented: Courts v. Campbell, 245 Pa. Superior Ct. 326, 369 A. 2d 425 (1976); Lawner v. Engelbach, 433 Pa. 311, 249 A. 2d 295 (1969). It is our finding that plaintiff has not proved his case of fraud by clear and convincing evidence:

"Fraud must be established by clear and satisfactory evidence, as it is never presumed. A party who relies on fraud to establish a claim has the burden of proving by clear and convincing evidence the facts upon which the alleged fraud is based. Fraud must be proved by more than a mere preponderance of evidence. Nothing short of evidence precise, clear, and indubitable can be allowed to overturn a written instrument.

"This rule in fraud cases that evidence must be clear, precise, and indubitable, means that witnesses must be credible, must distinctly remember the facts to which they testify, must narrate details exactly, and that evidence must be of such weight as to make out facts alleged beyond a reasonable doubt, thereby enabling the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. . . ." (Case citations omitted.) Laughlin v. McConnel, 201 Pa. Superior Ct. 180, 183-84, 191 A. 2d. 921 (1963).

With the above principles in mind, we have again reviewed the testimony adduced at trial and find that plaintiff has not carried his burden in the instant matter. We find that fraud by defendant was not proved under the exacting standards pronounced above and, therefore, plaintiff's exceptions in that regard must fail.

We next address defendant's exception with regard to the court's finding that defendant was not to retain any of the $10,200 unless actual damages were proven. We noted in our decision that penalties are forbidden—that one party should not be allowed to profit by the default of the other—that compensation, and not forfeiture, is the rule: In re Plywood Company of Pennsylvania, 425 F. 2d 151 (3d Cir. 1970). It has also been pointed out that:

"'The amount [of compensation for loss suffered] may be fixed by the parties in advance, but where a lump sum is named by them, the court will always look into the question whether this is really liquidated damages or only a penalty, the presumption being that it is the latter. The name by which it is called is of but slight weight, the controlling elements being the intent of the parties and the special circumstances of the case' . . . 'we must consider the relation which the sum stipulated bears to the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages and such other matters as are legally or necessarily inherent in the transaction.'" Kunkel & Jordan v. Wherry, 189 Pa. 198, 201-02, 42 Atl. 112 (1899).

The court, in its decision, suggested the holding of a further hearing to accept evidence as to defendant's damages. We now hold that a further hearing does not have to be held. Our change of position is based upon cases such as Kaufman Hotel & Rest. Co. v. Thomas, 411 Pa. 87, 93, 190 A. 2d 434 (1963), quoting Sanders v. Brock, 230 Pa. 609, 70 Atl. 772 (1911), wherein the settled rule with respect to contracts for the sale of land is ". . . that the party who has advanced the money, or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

See also the case of Kraft v. Michael, 166 Pa. Superior Ct. 57, 70 A. 2d 424 (1950), a case arising out of Delaware County, citing the Sanders decision

and finding that a ten percent downpayment was to be construed as a valid liquidated damages clause, not a penalty. See also Bartram v. Parrish, 73 D. & C. 2d 627 (1974), sustaining a ten percent liquidation clause.

Lastly, we refer to the case of Laughlin v. Baltalden, Inc., 191 Pa. Superior Ct. 611, 618, 159 A. 2d 26 (1960), wherein it is recorded:

"Real estate transactions, involving breaches in performance, are peculiarly within that class of cases where the measure of damages is difficult to ascertain. It is for that very reason that the practice has developed of inserting in sales agreements a sum certain, agreed to by the parties, as the amount which will be considered as compensation for a breach in performance. This may be the amount of the deposit or hand money, or it may be a sum in a lesser or greater amount, depending upon the consideration involved. Generally, we have held that where a purchaser repudiates an agreement of sale of real estate containing a provision for liquidated damages, the vendor is entitled to the sum agreed upon as liquidated damages. Tudesco v. Wilson, 163 Pa. Superior Ct. 352, 60 A. 2d 388."

True, the cases that we have cited refer to real estate transactions; however, a close scrutiny of the agreement entered into by the parties and the type of business that was being sold indicates to us that the measure of damages would be practically as difficult to ascertain as that in a real estate transaction. A reading of the documents that the parties signed and consideration of all the circumstances, especially the circumstance that plaintiff did very little, if anything, to make this an issue at trial, causes us to conclude that the trial judge erred in ordering a hearing to determine damages.

From the above, we therefore enter the following

## ORDER

And now, July 8, 1980, after reviewing the record of testimony and written briefs of counsel, we dismiss plaintiff's exceptions to the court's findings of fact, discussion and conclusions of law. We further sustain defendant's exceptions insofar as they relate to our findings of fact, conclusions of law and instructions concerning the amount of damages for breach of contract and the further hearing to determine same.

We find, as a fact, that plaintiff and defendant entered into a valid agreement and that the same provides for a stated liquidated sum to be forfeited by plaintiff to defendant upon breach of the agreement, such sum not being a penalty in nature, it being less than ten percent of the purchase price. Such sum, namely, $10,000 shall be forfeited by plaintiff to defendant, along with the $200 in legal fees, again as contracted for by and between the parties.

We therefore enter judgment in favor of defendant and against plaintiff.