J-A12013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF ROSE PHILLIPS, AN ALLEGED INCAPACITED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PHILADELPHIA CORPORATION FOR AGING | : : : : : : | |
| | : | No. 2331 EDA 2017 |

Appeal from the Decree June 23, 2017
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s): 539 AI of 2017

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 14, 2018**

The Philadelphia Corporation for Aging ("PCA") filed this appeal from the June 23, 2017 decree denying a petition for adjudication of incapacity and appointment of a plenary guardian for the person and estate of Rose Phillips, an alleged incapacitated person. We affirm.

During October 2016, Ms. Phillips was discharged from a physical rehabilitation facility and returned to the home she owns at 5038 Market Street, Philadelphia. She was a seventy-five-year-old diabetic who was convalescing from the lingering effects of a stroke. Soon after her return home, PCA sent Jennifer Mathews, a nurse investigator, to check on her status. The agency had received reports that Ms. Phillips was in an imminent risk of harm because she was not eating or taking her medication. Ms. Matthews found Ms. Phillips, who had answered the door with the assistance

of a walker, sitting without underwear on a soiled chuck pad that is used to collect human waste. Ms. Phillips possessed underclothing but complained that they did not fit properly. Although Ms. Phillips resided by herself, she indicated that her son, Shannon Phillips, assisted with her care. Unfortunately, Ms. Phillips was unable to provide any information regarding the schedules of her son or any of her caretakers. PCA initiated temporary personal care services so that Ms. Phillips could remain in her home.

On March 29, 2017, and June 19, 2017, Wendy Michelle Spencer, Psy.D, a psychologist employed by PCA, twice visited Ms. Phillips to perform clinical face-to-face evaluations and to administer the Saint Louis University Mental Status Exam. Ms. Phillips cooperated during the initial visit but declined to participate on the latter occasion. Dr. Spencer testified that Ms. Phillips's score on the one mental status examination that she performed was consistent with cognitive impairment. Moreover, based upon her two exchanges with Ms. Phillips, who demonstrated varying degrees of cooperation, Dr. Spencer diagnosed Ms. Phillips with neurocognitive disorder. Significantly, however, Dr. Spencer did not request a blood test, review any of Ms. Phillips's medical records associated with the recent stroke, or consider any other physiological reasons for Ms. Phillips's low score on the mental status examination. Similarly, she neglected to perform any alternative mental status examinations or speak with Ms. Phillips's son and caregivers.

Indeed, Dr. Spencer was unaware that Ms. Phillips was accompanied by a personal aid for six or seven hours per day.

On April 24, 2017, nearly two weeks prior to Dr. Spencer's second examination of Ms. Phillips, PCA instituted the instant guardianship proceedings pursuant to § 5512.1 of the Pennsylvania Probate, Estates and Fiduciaries Code ("PEF Code"). 20 Pa.CS. § 5501-5555. The agency contended that Ms. Phillips was totally incapacitated due to a moderate degree of unspecified neurocognitive disorder and required guardianship services. The orphans' court issued a citation to show cause why the petition should not be granted, and held an evidentiary hearing on June 22, 2017. PCA presented the testimony of Dr. Spencer and Nurse Matthews, and also called to the stand a proposed guardian, Steve McClosky, the principal of JMS Guardianship Services, Inc.

Ms. Phillips countered by testifying on her own behalf and presenting the testimony of her son and Charlotta Bryan, her personal aid. The agency's testimony was consistent with the foregoing recitation of the facts. Ms. Phillips's evidence established that Shannon Phillips visits twice per day, purchases groceries, manages medication, and maintains her finances. Ms. Phillips also adduced evidence to establish that her son is her power of attorney, and she confirmed her understanding of the decision to confer that

authority to her son as opposed to a third party.[1]  Specifically, she explained to the orphans' court, "Well, like I said before, if there's anybody that's going to handle my finances and do things for me, I want it to be my son."  N.T., 6/22/17, at 65.

On the basis of the foregoing evidence, the orphans' court denied PCA's petition for adjudication of incapacity and appointment of a plenary guardian, finding that Rose Phillips was not in need of a guardian.  This appeal followed.

Appellant raises two issues for our review:

> 1. Did the Orphans' Court abuse its discretion by disregarding the uncontradicted and unrebutted evidence of incapacity offered by Philadelphia Corporation for Aging's expert, who testified pursuant to [§] 20 Pa.C.S.A. § 5518?

> 2. Was it against the weight of the evidence for the Orphans' Court not to grant Philadelphia Corporation for Aging's petition where the hearing evidence unequivocally demonstrated both incapacity and the need for guardianship services?

Appellant's brief at 2-3.  We address these issues collectively.

We employ a deferential standard when reviewing an orphans' court decree.  *In re Estate of Smaling*, 80 A.3d 485 (Pa.Super. 2013).  We must ensure, however, that the court's decision is free from legal error.  *In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa.Super. 2005).  Our Supreme Court reiterated this principle in *In re Peery*, 727 A.2d 539, 540 (Pa. 1999) (quoting *Lawner v. Engelbach*, 249 A.2d 295 (Pa. 1969)),

---

[1] The written power of attorney was not introduced during the hearing or included in the certified record.

- 4 -

wherein it stated that reviewing courts are "bound by the trial judge's findings of fact unless those findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to fact by the lower court."

We are mindful of the purpose of the PEF Code's provisions relating to incapacitated persons, 20 Pa.C.S. §§ 5501-5555. In this vein, § 5502 recognizes that "every individual has unique needs and differing abilities." The purpose of the statute is to establish "a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them . . . and which accomplishes these objectives through the use of the least restrictive alternative." 20 Pa.C.S. § 5502.

The definition of an incapacitated person is as follows:

> "Incapacitated person" means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501.

Instantly, PCA argues that the orphans' court's findings are not supported by competent evidence. The statute governing determinations of incapacity is found at 20 Pa.C.S. § 5512.1, and provides in pertinent part:

> (a) **Determination of incapacity** – In all cases, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions. . . .

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions. . . .

. . . .

(c) **Plenary guardian of the person** – The court may appoint a plenary guardian of the person only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

20 Pa.C.S. § 5512.1.(a) and (c).

Herein, PCA had the burden of proving the statutory grounds to appoint a plenary guardian under § 5512.1(c), *i.e.*, that the person is totally incapacitated and in need of such services. Pursuant to § 5518,

[t]o establish incapacity, **the petitioner must present testimony**, in person or by deposition from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills. The petition must also present evidence regarding the services being utilized to meet essential requirements for the alleged incapacitated person's physical health and safety, to manage the person's financial resources or to develop or regain the person's abilities; evidence regarding the types of assistance required by the person and as to why no less restrictive alternatives would be appropriate; and

evidence regarding the probability that the extent of the person's incapacities may significantly lessen or change.

20 Pa.C.S. § 5518 (emphasis added).

At the outset, we reject the agency's bullet-point list of assertions that we should grant relief because Ms. Phillips did not: (1) present an expert to testify about her intellectual capacity; (2) dispute Dr. Spencer's qualifications; or (3) challenge the credibility of Dr. Spencer's testimony. *See* Appellants brief at 10. Stated plainly, as outlined in § 5518, PCA had the burden of demonstrating the need for guardianship by clear and convincing evidence. That is, to prevail on its petition, the agency was obligated to present the testimony of a qualified expert. In contrast, Ms. Phillips was not required to produce any evidence, much less countervailing expert testimony.[2]

Moreover, PCA's references to Dr. Spencer's qualifications and the credibility of her testimony are unavailing as neither is implicated in this case. Pointedly, the orphans' court did not assess Dr. Spencer's credibility. Instead, it examined Dr. Spencer's attention to detail in rendering her conclusion that Ms. Phillips was incapacitated despite the numerous facts that she admittedly neglected to consider in forming her opinion. Accordingly, we reject the assortment of preliminary arguments that PCA outlines in its brief.

---

[2] To the extent that PCA invokes Pa.R.E. 701 to challenge the admissibility of lay testimony regarding Ms. Phillips's capacity, that claim is waived because the agency failed to level that objection during the hearing.

Likewise, we find unpersuasive PCA's chief arguments that (1) the orphans' court was bound by Dr. Spencer's expert testimony under the circumstances presented in this case, and (2) the orphans' court's contrary determination was against the weight of the evidence. It is beyond peradventure that a trial court commits an abuse of discretion by dismissing uncontradicted expert testimony as unpersuasive **M.A.T. v. G.S.T.**, 989 A.2d 11, 19-20 (Pa.Super. 2010). Nevertheless, as the ultimate arbiter of fact, the orphans' court is not required to adopt even an uncontradicted expert opinion where competent evidence of record supports the court's independent determination. **See Nomland v. Nomland**, 813 A.2d 850, 854 (Pa.Super. 2002) ("So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts."); **Murphey v. Hatala**, 504 A.2d 917 (Pa.Super. 1986) ("[T]he trier of fact is not bound by the testimony of any expert witness and is under no obligation to accept the conclusions of an expert witness.").

Ignoring the evidence that Ms. Phillips presented to demonstrate both her current intellect and existing support system, PCA asserts that the orphans' court's decision to deny the petition for guardianship was against the weight of the evidence. Relatedly, as a preliminary matter, PCA asserts that the orphans' court erred in weighing the evidence in favor of Ms. Phillips when "it is unclear from the record whether Shannon Phillips . . . has her power of attorney." Appellant's reply brief at 1. While PCA is preoccupied with the fact

that the power of attorney was not introduced during the hearing or included in the certified record, both Ms. Phillips and her son confirmed the document's existence. N.T., 6/22/17, at 50-51, 61. Indeed, Shannon Phillips testified that his mother recently executed a new power of attorney at the request of a local credit union. *Id*. at 51. As the orphans' court accepted the foregoing testimony as credible, it is competent evidence that the document exists regardless of whether PCA reviewed it. Phrased differently, mindful that PCA did not challenge the specific terms of the power of attorney, once the orphans' court deemed the relevant testimony about the document credible, the record supported its finding that the document did, in fact, exist.

For the following reasons, we find that the certified record sustains the orphans' court's independent determination that PCA did not satisfy its statutory burden to prove that Ms. Phillips had a mental, emotional, or physical incapacity that required guardianship services. First, Dr. Spencer's evaluation failed to account for the fact that Ms. Phillips was still recovering from a stroke and physical rehabilitation when Dr. Spencer performed the mental status examination on March 29, 2017, and Dr. Spencer did not review any relevant medical records or images related to the stroke. *Id*., 13, 24, 28. Similarly, Dr. Spencer declined to order a blood test to consider whether a physiological reason existed for Ms. Phillips's apparent condition, administer any other type of mental status examination, or interview Ms. Phillips's son or

fulltime care giver, who works with Ms. Phillips approximately forty-seven hours per week. *Id*. at 19-20, 25, 58.

Furthermore, contrary to PCA's allegations of incapacity, during the hearing, Ms. Phillips explained her understanding of the power of attorney that she previously executed and stated her preference for her son to continue to handle her personal affairs. Importantly, she noted with disapproval her awareness that PCA intended to give someone else authority over her finances. *Id*. at 62. She testified, "if anybody does it, it should be my son. [Why] do I need somebody else?" *Id*. She was adamant about her aversion to outside meddling and reiterated the point while being examined by the orphan's court. She stated, "Well, like I said before, if there's anybody that's going to handle my finances and do things for me, I want it to be my son." *Id*. at 65. In addition, Ms. Phillips testified about her mental capacity. She stated, "I'm not crazy either. I was sick [when PCA intervened]. I had a stroke. I fell. And I'm [still] sick. But there's a lot of things that I can do now that I couldn't do before." *Id*. at 62. She continued that she executed the power of attorney so that her son could be of assistance, but she added, "I could pretty much help myself as far as that goes[.]" *Id*. at 63. For example, Ms. Phillips explained how she relayed her burial arrangements to her son and "I've told him where certain things are that he needs to look at, too." *Id*.

In addition to Ms. Phillips's testimony about her intellectual capacity, she presented evidence that her son visits her twice a day to check her blood sugar levels, feed her, and help administer medication, although Ms. Phillips is able to administer insulin independently. *Id*. at 45, 49, 51. He maintains his mother's finances and purchases supplies and food, which is prepared by Ms. Bryan. *Id*. at 45-46, 61. In addition to her son and Ms. Bryan, Ms. Phillips is visited throughout the week by various family members. *Id*. at 49. When asked about his mother's mental capacity during their daily interactions, Shannon Phillips testified, "I see her every day and there's nothing . . . that I see that she's mentally incapacitated like [PCA asserts]." *Id*. at 46.

In *In re Peery*, *supra* at 541, our High Court held that "a person cannot be deemed incapacitated if his impairment is counterbalanced by friends or family or other support." Instantly, Ms. Phillips stated her preference to continue her current support structure and the record reveals that those supports offset any of Ms. Phillips's impairments. As noted, Shannon Phillips has demonstrated great concern for his Mother. He visits frequently and assumed an active role in her financial welfare and home health care, including utilizing the power of attorney and hiring an aid to care for his mother in his absence. He testified that he intends to have his mother reside with him and his family, where his wife can help him provide care. N.T., 6/22/17, at 50, 55. He also plans to increase the amount of services his mother currently receives, including extending Ms. Bryan to fulltime care. *Id*. at 54-58. Ms.

Phillips also has the support of additional family members who visit her several times per week. Accordingly, based upon the competent evidence in the certified record, we discern no abuse of discretion in the orphans' court's findings that these facts demonstrate that a less restrictive alternative to guardianship is both reasonable and appropriate. Stated plainly, all of the foregoing evidence supports the orphans' court's determination that PCA failed to demonstrate clear and convincing evidence that Ms. Phillips was a totally incapacitated person in need of plenary guardianship services. Thus, notwithstanding Dr. Spencer's expert testimony, the orphans' court did not err in denying PCA's petition for the appointment of a plenary guardian.

Finally, we observe that, while we rule against PCA in this appeal, we applaud the agency for interceding with this family. The agency's intervention provided immediate services to Ms. Phillips, and its ensuing investigation likely provided the initiative for her son to assume a proactive role in his mother's care and to fashion the framework of support that rendered the appointment of a plenary guardian unnecessary at this juncture. In this vein, should the existing supports falter, we continue to look to PCA to intervene on Ms. Phillip's behalf and take the necessary steps, including refiling a guardianship petition, to assure that her needs are being appropriately met.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/14/18</u>